2004-NMSC-020

92 P.3d 1255

**John MONTANO, Plaintiff–Petitioner,**

v.

**ALLSTATE INDEMNITY COMPANY, Defendant–Respondent.**

**No. 27,966.**

Supreme Court of New Mexico.

May 20, 2004.

Rehearing Denied June 23, 2004.

McGinn & Carpenter, P.A., Randi McGinn, Clay Campbell, Albuquerque, NM, for Petitioner.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, for Respondent.

Miller Stratvert, P.A., Rudolph A. Lucero, Ruth Fuess, Albuquerque, NM, for Amicus Curiae, National Association of Independent Insurers.

Janet Santillanes, Albuquerque, NM, for Amicus Curiae, New Mexico Consumer Action, New Mexico Trial Lawyers Association.

**OPINION**

CHÁVEZ, Justice.

{1} In this case we are required, once again, to determine whether an insurance company effectively precluded its insured from stacking the policy limits of all of his vehicles insured under the policy for his uninsured motorist ("UM") claim. Although we have reviewed several such attempts by the insurance industry in the past, each case has presented a new wrinkle. Yet, this Court has never upheld an anti-stacking

clause in UM policies because in each case we found either an ambiguity in the policy or the payment of multiple premiums. We have done so in order to protect the reasonable expectations of the insured and because the insured should only get what he or she pays for. In this case we decline Plaintiff's invitation to declare all anti-stacking provisions void as against public policy. However, to further the important principles previously described, and influenced by NMSA 1978, § 66–5–301(A) and (C) (1983), we modify *Rodriguez v. Windsor Insurance Co.*, 118 N.M. 127, 879 P.2d 759 (1994) and *Lopez v. Foundation Reserve Insurance Co.*, 98 N.M. 166, 646 P.2d 1230 (1982), and hold that insurance companies must obtain written rejections of stacking in order to limit their liability. Such a modification to our judicially-created stacking doctrine will ensure that the insured's reasonable expectations are met and that an insured gets what he or she pays for and no more. Such a change should also, we hope, end the seemingly constant litigation in this area of law. Because, however, we recognize that this represents a new direction in our stacking jurisprudence, we will resolve the stacking question in this case under *Rodriguez*, which we read to require a plain and affirmative declaration that the amount charged represents a single premium for a single amount of coverage. This policy lacks such a declaration, and in the absence of such a declaration, Plaintiff is entitled to stack all four coverages.

## I.  Facts

{2} Plaintiff was injured in a single-car accident allegedly caused by an unidentified truck who negligently sprayed rocks onto the road. As a result, Plaintiff filed suit against his insurer, Defendant Allstate Indemnity Company ("Allstate"), alleging that he was contractually entitled to compensation under his UM policy, as well as other independent causes of action. Plaintiff further claimed that he was entitled to "stack," or aggregate the UM coverage limits of his four insured automobiles. Allstate, on the other hand, contends that under the contract Plaintiff is only entitled to stack the coverage limits of two policies, and that the contract is enforceable under New Mexico law. After resolving all other claims, the parties submitted the resolution of the stacking question to the District Court on cross-motions for summary judgment, agreeing that the matter be submitted on the basis of "stipulated facts by the parties, affidavits and sworn deposition testimony." The District Court granted Allstate's motion and denied Plaintiff's. Plaintiff appealed, and the Court of Appeals, with Judge Bustamante specially concurring, affirmed the District Court. *Montano v. Allstate Indemnity Co.*, 2003–NMCA–066, 133 N.M. 696, 68 P.3d 936. In a lengthy but lucid opinion, a majority of the Court of Appeals concluded that: (1) it would not advance this state's public policy to require stacking in every instance, *id.* ¶ 77; (2) courts should not look at the actuarial data behind a policy's premium structure, *id.* ¶¶ 58–59; and (3) the relevant provisions of Montano's insurance contract were not ambiguous, *id.* ¶ 47.

{3} The parties stipulate that the relevant contractual provisions are the declarations page, the policy itself, an amendatory endorsement, and an explanatory insert. The first page of Plaintiff's declarations lists separate premiums for each of Plaintiff's four covered automobiles, including a separate charge for UM property damage coverage, but one single charge for "additional coverages." That "additional coverage" is explained on a separate sheet to be UM coverage for bodily injury, and the limits of the coverage ($25,000 per person / $50,000 per accident) are indicated next to a single premium figure of $114.30.

{4} The relevant "Limits of Liability" policy provision, as amended by a later endorsement, provides in part:

> The Uninsured Motorists Insurance for Bodily Injury limit stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident, except when two or more vehicles are insured under this policy, **we** will stack or aggregate up to two, but no more than two, uninsured motorist insurance for **bodily injury** coverages under this policy. This means the insuring of more than one auto for other coverages or under Section II of this coverage will not increase **our**

limit of liability beyond the amount shown in the declarations, except when two or more vehicles are insured under this policy, we will stack or aggregate up to two, but no more than two, Uninsured Motorist Insurance for Bodily Injury coverages under this policy.

Along with the amendatory endorsement came an explanatory insert, which provided:

We have revised the "Limits of Liability" provision under "Bodily Injury Caused by Uninsured Motorists" . . . :

If you insure two or more vehicles under this policy, you can now "stack" the limits of Uninsured Motorists Insurance for Bodily Injury for two of the vehicles. For example, if you have two or more vehicles, which are each insured under this policy at $100,000 per accident for this coverage, we will pay up to $200,000 (subject to the "per person" limit) for injuries sustained as the result of an accident with a legally-liable uninsured motorist.

{5} After the amendment, therefore, Allstate's policy no longer contained an absolute anti-stacking clause, but rather a limitation-of-stacking clause. Allstate changed its former absolute anti-stacking policy as a result of court decisions in Kentucky and Oklahoma. *See Kramer v. Allstate Ins. Co.*, 909 P.2d 128 (Okla.Ct.App.1994); *Wilson v. Allstate Ins. Co.*, 912 P.2d 345 (Okla.1996); *Swartz v. Metropolitan Prop. & Cas. Co.*, 949 S.W.2d 72 (Ky.Ct.App.1997). In *Wilson*, one of the two Oklahoma cases, Allstate issued a single insurance policy covering the plaintiff's two vehicles. The policy provided for $25,000.00 per person and $50,000.00 per accident in UM coverage and contained language purporting to limit Allstate's liability to pay only one UM amount per accident, regardless of the number of automobiles covered under the policy. However, Allstate charged nearly twice the premium to multiple-car policyholders than it charged to single-car policyholders for identical UM coverage limits. Allstate had argued that, even with a higher premium for multi-vehicle policies, it charged a single premium and unambiguously precluded stacking; thus, stacking should not be required. *Wilson*, 912 P.2d at 346; *see also Kramer*, 909 P.2d at 129. The

Oklahoma Supreme Court disagreed and concluded that, because the premium for a multi-vehicle policy was nearly twice as large as for a single-vehicle policy, Allstate should be required to stack two coverage limits for UM claims. *Wilson*, 912 P.2d at 347; *see also Kramer*, 909 P.2d at 129; *Swartz*, 949 S.W.2d at 76–77. The original policy issued to Plaintiff by Allstate contained the same provisions rejected by the *Wilson* court.

{6} The parties in this case also stipulate that Allstate charges a "single uninsured motorist bodily injury cover premium," for a multiple-car policy, although they also stipulate that Plaintiff paid $114.30 "in premiums" for his coverage. The parties further stipulate that Allstate also charged, at the same time, a single premium of $61.80 for a single-vehicle policy. The parties now dispute the legal significance of Allstate's "single" premium and the relevance of actuarial justifications for this premium structure, but both agree that the dispute should not prevent the determination of this case on summary judgment.

{7} On appeal, Plaintiff argues: (1) that all anti-stacking clauses should be declared void as against New Mexico's public policy; and alternatively, (2) that under the circumstances of this case, he should be permitted to stack four coverage limits, Allstate's limitation-of-stacking clause notwithstanding. For the following reasons, we reverse the Court of Appeals and hold that Allstate's limitation-of-stacking clause is unenforceable.

## II. Plaintiff's Public Policy Argument

{8} Plaintiff first argues that we should follow *United States Fidelity & Guaranty Co. v. Ferguson*, 698 So.2d 77 (Miss.1997), and declare that all anti-stacking clauses are void as against New Mexico's stated policy in favor of stacking. In *Ferguson*, the Mississippi Supreme Court held that its public policy required stacking of UM coverage for every vehicle insured under every policy regardless of the number or amount of premiums paid for the coverage. *Id.* at 79. The Mississippi Supreme Court had previously determined that the intent of Mississippi's UM statute was "to provide the insured with *adequate protection* against injury caused by

684

an uninsured motorist," *id.* (emphasis added), and that stacking had become a "positive gloss" on the UM statute. *Id.* (quoted authority omitted). The court was skeptical of traditional notions of freedom of contract because insurance contracts are contracts of adhesion: "When the entire insurance industry writes its policies to preclude stacking of UM coverage, attempting to circumvent case law and defeat public policy, the insured is denied any choice whatsoever." *Id.* at 80. For these reasons the Court determined that, no matter the premiums paid, stacking would be required.

{9} Although our cases have expressed a public policy in favor of stacking as broadly as did the cases in Mississippi prior to *Ferguson,* we are not willing to expand this public policy at this time to require stacking in all cases. We have always understood stacking to be the remedy for an ambiguous contract or the charging of multiple premiums. This Court's intra-policy stacking jurisprudence begins with *Lopez,* 98 N.M. at 166, 646 P.2d at 1230. In *Lopez* the insured had purchased an insurance policy covering two automobiles and had paid separate premiums for UM coverage on each vehicle. Despite the clarity of the limitation-of-liability clause in that case, we found the policy ambiguous because it did not explain the effects of multiple premiums paid for UM coverage under the multi-vehicle policy. Having found an ambiguity, we determined that judicial construction of the policy was required. In deciding to allow the insured to stack his coverage limits, we relied primarily on two rationales which we found to be closely related: (1) intra-policy stacking fulfills the reasonable expectation of the insured, and (2) paying two premiums entitles an insured to two recoveries. We noted that "[w]here an insurance company charges a separate full uninsured motorist premium for each vehicle under a single or several policies, it is only fair that the insured be permitted to stack the coverages for which he has paid," even when the second premium is reduced. *Id.* at 171, 646 P.2d at 1235. Our rationale was guided by the simple fact that UM personal injury coverage does not follow the automobile. Instead we recognized that general UM coverage also insures one

against bodily injury while a pedestrian or a passenger in someone else's vehicle. *Id.* at 169, 646 P.2d at 1233.

{10} One option available to the insurance industry following our holding in *Lopez* was simply to accept that charging multiple premiums would result in stacking. The industry could then have adjusted its premiums accordingly while giving the insured the right to accept or reject stacked coverages. Instead, insurance companies have sought only to avoid stacking coverages. These efforts continued to meet with the disapprobation of the courts, due primarily to the ambiguities that persisted with anti-stacking provisions. *See Jimenez v. Foundation Reserve Ins. Co.,* 107 N.M. 322, 757 P.2d 792 (1988); *Rodriguez,* 118 N.M. at 127, 879 P.2d at 759.

{11} In *Jimenez* we held that, although the policy at issue unambiguously precluded stacking, that exclusion violated public policy because multiple premiums had been charged. In so doing, we emphasized the second rationale in *Lopez* over the first:

> [T]he law in New Mexico ... has been clear that when an injured insured is the beneficiary of a policy and either the insured or another has paid premiums for the benefit of the injured insured, then all policy coverages under which he or she is a beneficiary may be stacked.

*Jimenez,* 107 N.M. at 325, 757 P.2d at 795.

{12} In *Rodriguez* we had the opportunity to determine exactly the question presented in this case, specifically, whether we would preclude stacking when the insurance policy purports to preclude it and it appears that only one premium was charged. We initially noted that:

> [P]remium structures for uninsured motorist benefits in multi-car policies that purport to avoid a separate charge for the coverage with respect to each car ... lay[ ] heavy stress on the rationale in many of our cases predicating stacking, in significant part, on the insured's payment of multiple premiums for multiple coverages—i.e., a separate premium for the uninsured motorist coverage "on" each car insured under the policy.

118 N.M. at 127, 879 P.2d at 759. Because of a different ambiguity in the policy, however, we did not have to determine whether we would require stacking when a true single premium had been paid.

{13} The policy at issue in *Rodriguez* included a declarations page that stated that "insurance is provided where a premium is shown for the coverage," and included a chart with types of insurance on one axis and cars on the other. *Id.* at 128, 879 P.2d at 760. In the row labeled uninsured motorist, the policy listed the full price of the coverage in the first car's column, and listed "INCL" in each other column. The parties disputed whether the insurer charged separate premiums for each automobile. We determined that, when deciding whether more than one premium has been paid, "the essential factor . . . is whether a reasonable insured . . . would think that she was paying more than one premium for more than one coverage." *Id.* at 130, 879 P.2d at 762. We concluded that the policy was ambiguous as to whether more than one premium was paid because: (1) it was unclear what "INCL" meant in the policy declarations page; (2) because, although UM insurance follows the insured, not the car, the UM coverage was listed on a car-to-car basis; and (3) because the figures used in the limitation of liability section contradicted those on the declaration page. Because of these ambiguities, we construed the policy against the insurer and concluded that stacking was permitted. *Id.* at 133, 879 P.2d at 765; *see also Allstate Ins. Co. v. Stone,* 116 N.M. 464, 863 P.2d 1085 (1993) (declining to determine whether stacking would be required when the policy purports to charge only one premium, because other aspects of the contract remained ambiguous).

{14} Importantly, however, we further stated that "it is [not] impossible for an insurance company to issue uninsured motorist coverage that is immune to stacking." *Rodriguez,* 118 N.M. at 133, 879 P.2d at 765. Noting that we had given effect to an unambiguous clause providing that medical payments coverages could not be stacked in *Sanchez v. Herrera,* 109 N.M. 155, 783 P.2d 465 (1989), we indicated that

it may be possible to give effect to a *truly* unambiguous antistacking clause, provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance.

*Rodriguez,* 118 N.M. at 133, 879 P.2d at 765.

{15} We have never held that anti-stacking clauses violate public policy when unambiguous and when only one premium has been charged for the coverage. In fact, the above dicta in *Rodriguez* strongly suggested that we would give effect to anti-stacking clauses in UM policies—as we had in *Sanchez* for a med-pay provision—when they are truly unambiguous and plainly only charge one premium for one coverage limit. Plaintiff asks us to modify our case law and declare that *all* anti-stacking clauses are void as against public policy. We think that such a determination would expand the public policy in favor of stacking beyond what these earlier cases have declared it to be. Our public policy in support of stacking, rather, has always been tied to the notion that it is unfair not to allow stacking *when multiple premiums are paid* or when the policy is otherwise ambiguous. It would thus be an expansion of that policy to also require stacking when the policy clearly only charges a single premium and unambiguously precludes stacking. We decline to modify our case law in order to expand our expression of the public policy underlying stacking.

{16} Further, requiring stacking in all cases on a take-it-or-leave-it basis would reduce the freedom of the parties to contract for less coverage and thus their freedom to decide how much coverage they can afford. This could frustrate, rather than advance, the legislative intent behind the UM statute. By requiring insurers to offer UM coverage, *see* NMSA 1978, § 66-5-301 (1983), the legislature wanted to encourage insureds to purchase such coverage. Requiring stacking for all vehicles would put the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM cover-

age altogether, rather than deciding how much coverage they can afford. This could result in some lower-income insureds who own multiple vehicles being effectively "priced out" of UM coverage.

{17} Stacking is a judicially-created doctrine, which thus far has not met the disapproval of the Legislature. *Rodriguez,* 118 N.M. at 127, 879 P.2d at 759 (noting that our past cases have "evolved a strong judicial policy" favoring stacking). Although we have declined to adopt *Ferguson* and declare anti-stacking provisions void as against public policy, the facts of this case convince us that our traditional case-by-case ambiguity analysis has proved unworkable. For that reason, we take this opportunity to chart a new course. Bearing in mind that it is a judicial doctrine, we conclude that the protracted litigation over the validity of anti-stacking clauses in this State demands our continued efforts to clarify when and under what circumstances those provisions might be enforced. In doing so, we must re-evaluate the dicta in *Rodriguez* that suggested that it was possible for an insurer to draft standard contract language that would preclude stacking. In the face of increasingly complex insurance contracts and pricing strategies, we have become convinced that our case law, which includes the suggestion in *Rodriguez* of 'a safe harbor,' is no longer sufficient to protect the reasonable expectations of insureds and to ensure that they get what they pay for. The history of this litigation and the facts of this case convince us that a new approach is needed to satisfy these twin goals of our stacking jurisprudence.

■ {18} For this new approach, we find Chief Justice Dan Lee's special concurrence in *Ferguson* persuasive. The Chief Justice was uncomfortable with the approach of the majority, which, in his words, "steps across the fine line dividing interpretation of the law [and] promulgation of the law." *Ferguson,* 698 So.2d at 82 (Dan Lee, C.J., specially concurring). Instead, he looked to the language of Mississippi's UM statute, which, like that in this State, allowed the insured to opt out of UM coverage in writing. In order to clarify and make explicit the intention of the parties,

> the solution is to treat stacked coverage as extra coverage for which the parties have contracted, and to which the insured is entitled by default, unless the insurance company undertakes the burden of obtaining a separate, comprehensible, and written disclaimer of stacking. Under this rationale those who want stacked coverage pay for it, and those who don't want it don't pay for it.

*Id.* at 84. Such a rule, reasoned the Chief Justice, "best balances the interests in permitting private contractual relations between the parties, and honoring the broad intent of the [UM] statute." *Id.* We agree.

■ {19} In following the special concurrence in *Ferguson,* we also take guidance from Sections 66–5–301(A) and (C), which together suggest that insurance companies obtain the written rejection of each stacked coverage from its insureds in order to limit that coverage. Section 66–5–301(A) provides that no vehicle liability policy shall be delivered with respect to *any* vehicle registered or principally garaged in New Mexico unless UM coverage is provided therein. Although this Court interpreted this provision in *Lopez* as requiring "only that each of several vehicles insured under a single policy be covered by one minimum coverage," the court also acknowledged that such an interpretation did not preclude an insured from purchasing additional coverage. *Lopez,* 98 N.M. at 170, 646 P.2d at 1234. Before this case we have not been called upon to decide the implications of Section 66–5–301(C) on stacking. That provision has been interpreted as requiring an insured to reject UM coverage in writing. *Romero v. Dairyland,* 111 N.M. 154, 803 P.2d 243 (1990). When these two provisions are read together, we discern a solution to the seemingly inherent ambiguities in anti-stacking clauses: an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision.

{20} As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and

allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages. In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury. Thus, the insured's expectations will be clear, and an insured will only receive what he or she has paid for.

{21} Although we recognize this holding expands the holding in *Lopez,* or perhaps even calls it into doubt, we deem it necessary in order to effectuate the two functions of our stacking jurisprudence: fulfilling the reasonable expectations of the insured and ensuring that the insured receive what he or she pays for. In all future cases, an insurance policy that complies with this requirement will avoid the conclusion we now draw from the history of stacking litigation in this State, namely, that anti-stacking clauses are almost inherently ambiguous and are no longer effective at precluding stacking. With written waivers, insureds will know exactly what coverage they are receiving and for what cost; if an insurer is charging a higher premium based on the risk created by multiple vehicles, we will leave that to the market to resolve.

### III. Plaintiff's Ambiguity Argument

{22} Although we have set forth the policy language requirements for future stacking cases, we must now determine whether the particular contract at issue in this case effectively limits Plaintiff's right to stack to "two, but no more than two" coverage limits. We recognize that our holding described above is a new, and not easily foreshadowed, aspect to our jurisprudence on stacking and that it would be inequitable to

apply it against Allstate before it has had an opportunity to alter its policy language; for those reasons, we choose to give it a purely prospective application. *See Beavers v. Johnson Controls World Servs.,* 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994) (listing as factors we consider when deciding to exercise our inherent authority to give our decisions prospective effect whether the rule is new, whether retroactive application would advance or retard the new rule, and whether it would be inequitable to apply the new rule against the parties). To resolve this case, we will instead rely on our traditional ambiguity analysis, as described in *Rodriguez.* Plaintiff argues: (1) we should, on the basis of Allstate's premium structure, find the limitation-of-stacking clause unenforceable; and (2) the limitation-of-liability clause is ambiguous and therefore unenforceable under our case law. Because of Allstate's premium structure, it is no simple matter for a reviewing court, much less an insured, to determine whether Allstate charges a single premium or multiple premiums. We therefore hold that Allstate's insurance contract fails to meet the requirements set forth in *Rodriguez.*

{23} As the District Court in this case concluded, Allstate charged a multiple-vehicle rate that is less than twice the single vehicle rate. On this basis, Allstate argues that Plaintiff should not be permitted to stack more than two coverages, precisely as the insurance policy now indicates. Plaintiff argues, however, that we should look behind the text and consider Allstate's methods in establishing its premium rates. As noted, when multiple premiums are charged for UM coverage on multiple cars, even in the face of a truly unambiguous limitation-of-liability clause, stacking will be required. In *Lopez* we suggest that the reasons for such a rule are: (1) it is only fair to give the insured what was paid for, and (2) it would give effect to the reasonable expectation of the insured to allow stacking. For most cases, these two closely related rationales are cumulative; when, however, the policy appears to charge one premium but it is alleged that the one premium contemplates multiple vehicles, then the rationales diverge. If the primary goal is to fulfill the reasonable expectations

of the insured, then there is no need to look at anything beyond the language of the policy itself. If, on the other hand, the primary goal is to give insureds what they pay for, then we should, at the very least, be concerned with the actuarial methods used to arrive at the premium and should look behind the policy language itself. Indeed, the parties dispute much regarding how the premiums were calculated in this case and what the primary policy behind our stacking jurisprudence is. For the following reasons, we conclude that we need not resolve which rationale to give primary effect.

{24} We are convinced, however, that to resolve this case we should not ignore everything behind the policy language itself. To do otherwise might encourage actuarial ruses, such as has been alleged by Plaintiff, in order to defeat our stated public policy in favor of stacking when multiple premiums are charged. Indeed, if courts followed the suggestion of the Court of Appeals and refused to review the insurer's actuarial methods, Allstate would likely never have amended its policy in response to case law and permitted its customers to stack at least two coverages. Because Allstate did not increase the premium for UM coverage, but rather amended the policy to allow the stacking of up to two coverages, a reasonable inference is that prior to the mandates of the courts in Oklahoma, Allstate insureds may not have been receiving what they paid for.

{25} Allstate argues that we have determined that the reasonable expectation of the insured is the guiding policy behind our stacking jurisprudence, and as such any actuarial evidence suggesting that multiple premiums have been paid under the guise of a single premium is irrelevant. In support, Allstate relies on *Shope v. State Farm Insurance Co.*, 1996–NMSC–052, 122 N.M. 398, 925 P.2d 515, where we had to determine whether to apply Virginia law to an UM policy when the insured purchased the contract in Virginia, but the accident occurred in New Mexico. Ordinarily, Virginia law, as the lex loci contractus, would apply unless the application of that law would violate a fundamental public policy of New Mexico. Under Virginia law the insurance contract, which

clearly prohibited stacking, would be enforced. In deciding to apply Virginia law, we noted that, although New Mexico public policy favors stacking, "our rationale in establishing this policy did not concern fundamental principles of justice, but focused on the expectations of the insured." *Id.* ¶ 7. Furthermore, "[w]hile we interpret New Mexico insurance contracts to avoid repugnancy in clauses that prohibit stacking of coverages for which separate premiums have been paid, this rule is one of contract interpretation that does not rise to the level of a fundamental principle of justice." *Id.* ¶ 9.

{26} We find *Shope* distinguishable, in that it does not appear that in that case there was any allegation that the premium structure used by the insurer charged multiple premiums under the guise of a single-premium charge. Further, that our policy in favor of stacking is not "fundamental" for purposes of a choice-of-law analysis does not mean that it is unimportant.

{27} Under *Rodriguez* we suggested that to be truly unambiguous, an insurance contract should, among other things, "plainly notif[y] the insured that only one premium has been charged for one insurance coverage." 118 N.M. at 133, 879 P.2d at 765. The contract at issue failed this requirement. A reasonable insured simply cannot determine whether or not "one premium has been charged for one insurance coverage." Although the contract purports to charge a single premium for a single coverage, the amendatory endorsement allows the insured to aggregate two coverages. Compounding the ambiguity is the fact that Allstate, in setting its premium, admits that it has factored into its premium calculation the average number of vehicles on all multi-vehicle policies, including those policies insuring three or more vehicles. We read *Rodriguez* to require a plain and affirmative declaration that the amount charged represents a single premium for a single amount of coverage; unquestionably, this contract has not done so. As such, we hold that it fails to meet the requirements set forth in *Rodriguez* for a truly unambiguous policy, and that Plaintiff is entitled to stack his four coverages.

## IV. Conclusion

{28} We conclude that the insurance contract at issue fails to satisfy the requirements of *Rodriguez,* and Plaintiff is entitled to stack his four coverages. Further, taking the lead from the special concurrence in *Ferguson* and Section 66–5–301(C), we require insurance companies in future cases to obtain written rejections of stacking in accordance with this opinion in order to eliminate ambiguity and to effectively limit their liability. We reverse the Court of Appeals and remand this case for further action consistent with this opinion.

{29} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA and RICHARD C. BOSSON, Justices.