# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DON E. HOOVER, individually and as personal representative of the ESTATE OF DEBORAH H. HOOVER,**

Plaintiff-Appellee,

**v.**                                                                    **No. 28,776**

**METROPOLITAN PROPERTY AND CASUALTY INSURANCE CO. d/b/a METLIFE AUTO & HOME INSURANCE CO.,**

Defendant-Appellant,

**and**

**MELODY HEATH, ROBYN SENTELL, DUANE L. SPURLOCK, STATE FARM INSURANCE CO., and MID-CENTURY INSURANCE CO.,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Steven K. Sanders & Associates, LLC
Albuquerque, NM

Freda Howard McSwane
Ruidoso, NM

for Appellees

Miller Stratvert P.A.
Lawrence R. White
Elizabeth B. Driggers
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Chief Judge.**

Defendant MetLife Auto & Home Insurance Co. appeals from an order granting summary judgment on the question of whether Ms. Hoover's uninsured/underinsured motorist coverage was stackable. In this Court's calendar notice, we proposed to reverse the district court's conclusion that the coverage could be stacked. Plaintiff has timely responded with a memorandum in opposition to our proposed summary disposition. We have considered Plaintiff's arguments. We are unpersuaded and reverse the district court's summary judgment.

First, Plaintiff argues that this Court does not have jurisdiction to hear this appeal because Plaintiff contends that the summary judgment order was not final for purposes of appeal. [MIO 1-2] In this Court's notice of proposed summary disposition, we impliedly proposed to conclude that the order was final, since we discussed the merits of MetLife's argument. Plaintiff responds by asserting that "[t]here remains the issue[] of the dollar amount of the judgment, whether it bears

interest from some date prior to entry of a final judgment and costs, whether the insurance company wrongfully deducted medical payments from the amount paid for one vehicle and/or failed to stack medical payments." [MIO 1-2]

Despite Plaintiff's arguments, we conclude that the order was a final appealable order. Plaintiff filed suit individually and as personal representative of his wife's estate for wrongful death, negligence, and other claims against the driver of the other vehicle involved in the accident and others. [RP 1-4] Plaintiff eventually settled with the defendants against whom these claims were brought, and those defendants were dismissed with prejudice from the case. [RP 215, 305-06]

As part of Plaintiff's suit, he also sought a declaratory judgment against his own insurer, MetLife. [RP 4-5] In seeking a declaratory judgment, Plaintiff asked the district court to determine whether his wife's uninsured/underinsured motorist coverage was stackable and whether MetLife could subtract the amount of medical payments received by Plaintiff individually and by his wife's estate from any payment MetLife owed to them. [RP 5 (¶ 22)] Plaintiff did not seek damages from MetLife. [See RP 4-5] In its answer, MetLife stated that it did not take the position that the amount of medical payments received by Plaintiff should be deducted from any payment due from MetLife to Plaintiff. [RP 64 (¶ 12)] Therefore, the only

controversy between Plaintiff and MetLife relates to whether Ms. Hoover's uninsured/underinsured motorist insurance should be stacked. MetLife and Plaintiff filed cross-motions for summary judgment on this issue. [RP 198-205, 244-55] The district court concluded that the coverage was stackable as to three vehicles. [RP 385-86] As Plaintiff's claim against MetLife was for declaratory judgment and did not involve a claim for damages, we disagree with Plaintiff that the issue of damages is still outstanding or that there are any other issues that must be resolved in the case. *See Valley Improvement Ass'n v. Hartford Accident & Indem. Co.*, 116 N.M. 426, 429, 863 P.2d 1047, 1050 (1993) (noting that when declaratory relief is sought against a party without a claim for damages, the question of damages need not be decided for an order to be final). Therefore, because the district court's order resolved all outstanding issues between Plaintiff and MetLife, we conclude that it was final for purposes of appeal. *See Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (stating that an order or judgment is considered final if "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible" (internal quotation marks and citation omitted)).

In this Court's calendar notice, we proposed to hold that the district court erred in concluding that the new rule announced in *Montano v. Allstate Indemnity Co.*,

3

2004-NMSC-020, ¶ 19, 135 N.M. 681, 92 P.3d 1255, that an insurance company can only rely on an anti-stacking provision in its policy if it obtains a written waiver of stacking from its insured, applies to this case. We noted that civil decisions such as *Montano* are presumed to be retroactive unless the New Mexico Supreme Court expressly directs otherwise. *See Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 397-98, 881 P.2d 1376, 1382-83 (1994). However, this is just what our Supreme Court did in *Montano*, since it stated in the clearest of terms that the decision was to be applied only prospectively. *See* 2004-NMSC-020, ¶ 22 ("We recognize that our holding described above is a new, and not easily foreshadowed, aspect to our jurisprudence on stacking and that it would be inequitable to apply it against [an insurance company] before it has had an opportunity to alter its policy language; for those reasons, we choose to give it a purely prospective application.").

When a new rule of law announced in a judicial opinion is applied prospectively, it affects only those cases in which the injuries and damages alleged in the complaint occurred after to the decision. *See Lopez v. Maez*, 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982) (applying the decision to parties in future cases "in which the damages and injuries arise after the date of the mandate in this case"). The injuries in this case are alleged to have arisen from an event that occurred on July 19, 2001.

4

[RP 3 (¶ 9)] As the injuries and damages are alleged to have arisen long before the Supreme Court announced its new rule in *Montano*, we proposed to conclude that *Montano*'s rule does not apply to this case, and that it is instead governed by *Rodriguez v. Windsor Insurance Co.*, 118 N.M. 127, 879 P.2d 759 (1994). *See Montano*, 2004-NMSC-020, ¶ 22 (relying on *Rodriguez*'s traditional ambiguity analysis since the rule announced in *Montano* was to be purely prospective).

In Plaintiff's memorandum in opposition to this Court's proposed summary disposition, Plaintiff seems to concede that *Montano* does not control this case. [*See* MIO 2 ("The results in the instant action do not rely on *Montano* . . . but instead are based upon existing law that predates *Montano*.")] However, Plaintiff then makes arguments that depend on the rule announced in *Montano*, rather than on the law as it existed prior to that decision. For instance, Plaintiff argues that NMSA 1978, Section 66-5-301 (1983) and 13.12.3.9 NMAC, require that uninsured motorist coverage must be provided for each separate vehicle unless expressly rejected by the insured. [MIO 5-6] But prior to *Montano*, the law had been that Section 66-5-301 required that "only that each of several vehicles insured under a single policy be covered by one minimum coverage." *Montano*, 2004-NMSC-020, ¶ 19 (internal quotation marks and citation omitted). Further, before *Montano* the Court had "not

been called upon to decide the implications of Section 66-5-301(C)." *Id.* Therefore, because under the law prior to *Montano*, MetLife was not required to obtain an insured's express rejection of either additional uninsured/underinsured motorist coverage above and beyond the "one minimum coverage," or to obtain an insured's express rejection of stacking, we find Plaintiff's argument to be without merit. Because Plaintiff fails to convince this Court that we should apply *Montano*, rather than the law as it existed prior to that decision, we hold, as we did in our notice of proposed summary disposition, that the rule of *Rodriguez* applies. *See Montano*, 2004-NMSC-020, ¶ 22 (relying on the Court's traditional ambiguity analysis as described in *Rodriguez*).

In *Rodriguez*, our Supreme Court stated that

> it may be possible to give effect to a *truly* unambiguous antistacking clause, provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance.

118 N.M. at 133, 879 P.2d at 765. We conclude that the anti-stacking provisions of Ms. Hoover's policy meet these requirements.

The declarations page of the policy states that "[c]overage is provided when a premium and a limit of liability is shown for the coverage." [RP 207 "Item 3"] In the

chart showing the coverages and the limits of liability, the declarations page states that Ms. Hoover had $60,000 of uninsured motorist coverage for each accident and that a single premium of $55 was charged for Auto 1. [RP 207] The declarations page then refers to "[e]ndorsements made a part of the policy at the time of issue" and lists "AUTO2859" as one of the endorsements. [RP 207] Endorsement AUTO2859 was devoted entirely to explaining to the insured that the maximum amount of coverage for uninsured motorist coverage is the amount stated on the declarations page, regardless of the number of vehicles insured. [RP 208] The endorsement states, "Your total Uninsured/Uniderinsured Motorists Coverage Limit is the limit displayed on your policy's declarations page. This coverage is provided on a per policy limit basis, regardless of the number of vehicles covered on the policy." [RP 208]

The endorsement also explains that the insurer does not intend and the policy is not priced to provide for stacking. [RP 208] In addition, endorsement AUTO2859 states, "This important notice clarifies our intent to provide Uninsured/Underinsured Motorists Coverage only up to the limits shown on your declarations page" and that this is true "regardless of the number of vehicles insured under one policy, the number of persons injured or the number of claims or causes of action resulting from one accident." [RP 208]

In our view, the policy language including endorsement AUTO2859 "plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy" and was sufficient to indicate to the reasonable insured that she "should bear this feature in mind when purchasing insurance." *See Rodriguez*, 118 N.M. at 133, 879 P.2d at 765.

Plaintiff argues that even if the policy provided adequate notice that stacking was not permitted, it was still ambiguous in other respects, such that stacking should be allowed. [MIO 8-10] Plaintiff claims that certain sections regarding the limits of liability policy were ambiguous because they seemed to suggest that the amount of uninsured motorist coverage was dependent on the limit applicable to the particular vehicle that the insured was "occupying" at the time of the accident. [MIO 9] Even if we were to agree with Plaintiff that these provisions were ambiguous, we would not conclude that the ambiguity requires stacking under *Rodriguez.* We find nothing in *Rodriguez* to suggest that *any* ambiguity regarding any element of uninsured motorist coverage in an insurance policy requires stacking. Rather, we believe that the ambiguity must be related to whether stacking is permitted under the policy. The provisions Plaintiff claims are ambiguous are not ambiguous as to the question of

8

whether the insured is entitled to the amount of coverage specified on the declarations page times the number of insured vehicles. Instead, the provisions are arguably ambiguous only on the issue of whether the amount of coverage permitted was dependent on which covered vehicle the injured person occupied at the time of the accident. Therefore, we conclude that any such ambiguity would not affect the other clear policy statements that the maximum amount of coverage was the amount listed on the declarations page, regardless of the number of vehicles insured.

Although there was only one premium shown for uninsured motorist coverage, Plaintiff also suggests that the policy was ambiguous because certain sections of the policy referred to "premiums" shown in the declarations page, "thus implying that more than one premium may be shown in the declarations." [MIO 9; RP 252] Plaintiff does not explain how this claimed ambiguity might lead a reasonable insured to believe that she could stack uninsured motorist coverage when she had only paid a single premium, and we conclude that it would not do so.

Plaintiff also argues that the contract is ambiguous because the endorsement AUTO2859 states that there is only one premium charged for uninsured motorist coverage per policy, but MetLife admits charging a separate premium for each vehicle covered for property damage, even though the declarations page shows only one

9

premium. [MIO 9] We do not agree with Plaintiff's characterization of this charge or payment as a separate premium. Although the record indicates that part of the $55 premium that Ms. Hoover paid for uninsured/underinsured motorist coverage was $6 for uninsured motorist property damage coverage [RP 322 (¶ 9)], this was not charged as a separate premium, but was instead part of the $55 premium for uninsured/underinsured motorist coverage [RP 207, 322 (¶ 12)] and, like the $55 premium of which it was a part, was the rate for coverage regardless of the number of vehicles insured. [RP 322 (¶¶ 9, 12-13)] Therefore, we find nothing in the fact that part of the $55 premium for uninsured/underinsured motorist coverage was a $6 fee for property damage coverage that would create an ambiguity as to whether stacking of uninsured/underinsured motorist coverage was permitted.

Accordingly, we hold that the district court erred in determining that any of the claimed ambiguities in the policy were of the sort that warranted stacking of uninsured motorist coverage. Therefore, for the reasons stated in this opinion and in our notice of proposed summary disposition, we reverse.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Chief Judge**

**WE CONCUR:**

10

_____

**JAMES J. WECHSLER, Judge**


_____

**MICHAEL D. BUSTAMANTE, Judge**