This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: July 2, 2025**

**No. S-1-SC-40157**

**LINDA GARCIA,**

Plaintiff-Respondent,

v.

**ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Fred Van Soelen, District Judge**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Shannon N. Nairn
Albuquerque, NM

for Petitioner

Mark S. Sweetman
Clovis, NM

for Respondent

Allen Law Firm, LLC
Meena H. Allen
Albuquerque, NM

for Amicus Curiae American Property Casualty Insurance Association

Martinez, Hart, Sanchez, & Romero, P.C.
Julio C. Romero
Albuquerque, NM
David J. Stout

Albuquerque, NM

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

Harada and Winters, LLC
Nikko Harada
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**DECISION**

**ZAMORA, Justice.**

**{1}**     In *Montano v. Allstate Indemnity Co.*, we instructed that an insurance company wishing to preclude the stacking of Uninsured/Underinsured Motorist ("UM/UIM") coverage in a policy insuring multiple vehicles "should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision." 2004-NMSC-020, ¶ 19, 135 N.M. 681, 92 P.3d 1255. Following our decision in *Montano*, if an insurer has obtained from the insured a valid waiver of stacked coverage, and if the contract is otherwise unambiguous that UM/UIM coverages will not be stacked, New Mexico courts will enforce the waiver. *See id.* ¶ 21.

**{2}**     In this case, the insured, Plaintiff Linda Garcia, signed a waiver that explained stacking and set out the premiums that would be charged for coverage on a per-policy basis, but Defendant Allstate Fire and Casualty Insurance Company subsequently sent Plaintiff declaration pages that presented the premiums and coverage on a vehicle-by-vehicle basis. Plaintiff argued before the district court and the Court of Appeals that, notwithstanding the signed waiver, she should be permitted to stack her coverage because the declaration pages rendered the contract ambiguous as to how many premiums she paid for UM/UIM insurance. We hold Plaintiff knowingly rejected stacked UM/UIM coverage and the declaration pages did not render the contract ambiguous. We exercise our discretion to dispose of this appeal by nonprecedential decision and remand this case to the district court to reinstate its judgment in favor of Allstate. *See* Rule 12-405(B) NMRA.

**I.     BACKGROUND**

**{3}**     The relevant facts of this case are not in dispute. In March 2016, Plaintiff held an automobile insurance policy with Allstate insuring one vehicle, a Chevrolet Tahoe. In this initial policy, Plaintiff had liability insurance in the amounts of $25,000 per person/$50,000 per occurrence for bodily injury and $25,000 per occurrence for property damage. She had purchased UM/UIM insurance in the same amounts. Plaintiff was charged $38.78 for UM/UIM coverage on her Tahoe.

**{4}** In August 2016, Plaintiff added a second vehicle to her policy, a Dodge Neon. Because her policy now included multiple vehicles, Allstate sent Plaintiff a selection/rejection form (the "waiver") to indicate whether she wished to purchase stacked or non-stacked UM/UIM bodily injury coverage. The waiver included a brief explanation of stacked and non-stacked coverage, explaining that stacked coverages "are added together (stacked) to determine the total amount of available coverage," and that non-stacked coverage could be purchased at a lower premium.

**{5}** The waiver also stated that "[t]he premiums shown on this document are per policy." The waiver provided three coverage options with corresponding premiums. The first offered stacked coverage "for all vehicles on the policy" for $168.05.

**YOU HAVE THE FOLLOWING OPTIONS REGARDING UNINSURED MOTORISTS INSURANCE FOR BODILY INJURY AND PROPERTY DAMAGE:**

A) You may purchase Uninsured Motorists Insurance for Bodily Injury and Property Damage at limits **equal to** or **lower than** your Bodily Injury Liability and Property Damage Liability limits, but not less than the minimum financial responsibility limits that New Mexico requires. You may select either **stacked** or **non-stacked** coverage for Bodily Injury Liability limits only. This option is not available for Property Damage Liability limits.

Your current Bodily Injury Liability and Property Damage limits are as follows:

$25,000/ $50,000 for Bodily Injury            $25,000 for Property Damage

**Please indicate your selection by initialing your choice.**

1)   **SELECTION OF STACKED UNINSURED MOTORISTS INSURANCE FOR BODILY INJURY AND NON-STACKED UNINSURED MOTORISTS INSURANCE FOR PROPERTY DAMAGE**

I select stacked Uninsured Motorists Insurance for Bodily Injury and **non-stacked** Uninsured Motorists Insurance for Property Damage at limits:

*(initials)*   equal to my Bodily Injury and Property Damage Liability Insurance limits of $25,000/ $50,000/ $25,000 for all vehicles on the policy, for $ 168.05 ; or

*(initials)*   lower than my Bodily Injury and Property Damage Liability Insurance limits for all vehicles on the policy with the selection below:

I select lower limits of:

| Bodily Injury | | | Property Damage | | |
|---|---|---|---|---|---|
| Initial Below | Limits | Premium | Initial Below | Limits | Premium |
| _____ | $ 25,000/$ 50,000 | $158.65 | ..... | $10,000 | $7.46 |
| | | | ..... | $25,000 | $9.40 |

The second option offered non-stacked coverage for $89.13.

2) SELECTION OF NON-STACKED UNINSURED MOTORISTS INSURANCE FOR BODILY INJURY AND NON-STACKED UNINSURED MOTORISTS INSURANCE FOR PROPERTY DAMAGE

I select non-stacked Uninsured Motorists Insurance for Bodily Injury and non-stacked Uninsured Motorists Insurance for Property Damage at limits:

*(Initials)* equal to my Bodily Injury and Property Damage Liability Insurance limits of $25,000/ $50,000/ $25,000 for all vehicles on the policy, for $ 89.13 or

*(Initials)* lower than my Bodily Injury and Property Damage Liability Insurance limits for all vehicles on the policy with the selection below:

I select lower limits of:

| Bodily Injury | | | Property Damage | | |
|---|---|---|---|---|---|
| Initial Below | Limits | Premium | Initial Below | Limits | Premium |
| _____ | $ 25,000/$ 50,000 | $79.73 | _____ | $10,000 | $7.46 |
| | | | _____ | $25,000 | $9.40 |

Plaintiff was also permitted to reject UM/UIM coverage entirely.

You may reject Uninsured Motorists Insurance for Bodily Injury and Property Damage entirely.

**Please indicate your selection by initialing your choice.**

REJECTION OF UNINSURED MOTORISTS INSURANCE FOR BODILY INJURY AND PROPERTY DAMAGE

*(Initials)* I reject Uninsured Motorists Insurance for Bodily Injury and Property Damage entirely. I understand I will have no coverage for bodily injury and/or property damage caused by an uninsured motorist because of an accident.

Plaintiff selected non-stacked coverage by initialing the second option and signing the waiver.

{6}     Allstate promptly issued Plaintiff an amended policy that included declaration pages showing the coverage she had selected. The declaration pages included a "Supplement to Policy Declarations" stating Plaintiff had selected non-stacked UM/UIM coverage at limits equal to those selected for bodily injury liability. The declaration pages also set out premium information by vehicle, including the UM/UIM premium amounts for the Tahoe ($40.89) and for the Neon ($48.24).

## Coverage detail for 2002 Chevy Trk Tahoe

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | Not applicable | $295.46 |
|   Bodily Injury | $25,000 each person<br>$50,000 each occurrence | | |
|   Property Damage | $25,000 each occurrence | | |
|   Auto Collision Insurance | **Not purchased*** | | |
|   Auto Comprehensive Insurance | **Not purchased*** | | |
|   Rental Reimbursement | **Not purchased*** | | |
| Roadside Help | $100 each disablement | Not applicable | $8.00 |
| Uninsured Motorists Insurance | | | $40.89 |
|   Bodily Injury | $25,000 each person<br>$50,000 each accident | Not applicable | |
|   Property Damage | $25,000 each accident | $250 | |

Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may not be stacked.

| Automobile Medical Payments | $5,000 each person | Not applicable | $19.68 |

## Coverage detail for 2004 Dodge Neon

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Automobile Liability Insurance | | Not applicable | $175.80 |
|   Bodily Injury | $25,000 each person<br>$50,000 each occurrence | | |
|   Property Damage | $25,000 each occurrence | | |
|   Auto Collision Insurance | **Not purchased*** | | |
|   Auto Comprehensive Insurance | **Not purchased*** | | |
|   Rental Reimbursement | **Not purchased*** | | |
| Roadside Help | $100 each disablement | Not applicable | $8.00 |

*(continued)*

| Coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Uninsured Motorists Insurance | | | $48.24 |
|   Bodily Injury | $25,000 each person<br>$50,000 each accident | Not applicable | |
|   Property Damage | $25,000 each accident | $250 | |

Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may not be stacked.

| Automobile Medical Payments | $5,000 each person | Not applicable | $26.93 |

{7}    Added together, the per-vehicle UM/UIM premium amounts for the Tahoe plus the Neon totaled $89.13, which was the amount listed on the waiver as the per-policy premium for non-stacked coverage.

{8}    According to Plaintiff, in December 2016, she was walking in a pedestrian walkway when she was struck by a vehicle driven by an underinsured motorist. She demanded that Allstate reform her contract to stack her UM/UIM coverage. Allstate refused to provide stacked coverage, asserting that Plaintiff had not selected or purchased it.

{9}    Plaintiff filed a complaint for declaratory relief against Allstate, asking the district court to reform her policy to include stacked coverage, and the parties filed cross-motions for summary judgment. Among other arguments, Plaintiff argued that Allstate

had charged multiple premiums for multiple coverages. She specifically argued that Allstate's policy was confusing by presenting combined, per-policy premiums on the waiver, while showing per-vehicle premiums on the declaration pages. Allstate responded that it had met all legal requirements in securing Plaintiff's rejection of stacked UM/UIM coverage and that the premiums set out in the declaration pages represented an allocation of the single per-policy premium presented in the waiver.

{10}  The district court granted summary judgment in favor of Allstate. The court found "the forms presented and signed by Ms. Garcia did show the premium costs for both the stacked and non-stacked options, Ms. Garcia initialed and signed the non-stacked option," and "all other requirements under New Mexico law were implemented by Allstate."

{11}  Plaintiff filed a timely appeal, and the Court of Appeals reversed. *Garcia v. Allstate Fire & Cas. Ins. Co.*, 2024-NMCA-010, ¶ 18, 541 P.3d 162. Without addressing the effect of the waiver, the Court found the declaration pages' listing of premium charges for UM/UIM coverage on each vehicle rendered the premium structure ambiguous and "could lead a reasonable insured to think they are paying multiple premiums." *Id.* ¶ 16. It held Plaintiff was therefore "entitled to stack her coverages." *Id.* ¶ 17.

{12}  We granted Allstate's petition to review the Court of Appeals' decision under Rule 12-502 NMRA and now reverse.

## II.  DISCUSSION

### A.  Standard of Review

{13}  We review claims requiring the interpretation of insurance-policy language de novo. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 60, 123 N.M. 752, 945 P.2d 970. "In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 29, 501 P.3d 433 (internal quotation marks and citation omitted). We construe insurance contracts as a whole. *Rummel*, 1997-NMSC-041, ¶ 20. The district court's grant of summary judgment is also subject to de novo review. *Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 12, 145 N.M. 542, 202 P.3d 801.

### B.  Allstate Secured a Valid Waiver of Stacked Coverage, and the Contract is Not Ambiguous

### 1.  Allstate secured a valid waiver of stacked coverage

{14}  The dispute between the parties may be reduced to this: whether Allstate's waiver, which Plaintiff signed, was effective in securing Plaintiff's rejection of stacked UM/UIM coverage or whether, instead, the contract as a whole was rendered ambiguous by the policy's declaration pages. Plaintiff asks us to affirm the Court of

Appeals and argues the policy was ambiguous because it was unclear whether she paid multiple premiums for multiple coverages. Allstate responds that Plaintiff knowingly waived stacked coverage by executing the waiver and selecting non-stacked coverage and paying the correspondingly lower premium, and thus, that her selection should be enforced.

**{15}** "Intrapolicy stacking is a judicial remedy and now a common industry practice favored (although not mandated) in New Mexico." *Ullman v. Safeway Ins. Co.*, 2023-NMSC-030, ¶ 29, 539 P.3d 668. It allows an insured to stack (or add together) two or more coverages under a policy "until all damages either are satisfied or the total policy limits are exhausted." *Id.* (internal quotation marks and citation omitted). "The obligation of the insurer is a question of contract law and will be determined by reference to the terms of the insurance policy." *Knowles v. United Servs. Auto. Ass'n*, 1992-NMSC-030, ¶ 9, 113 N.M. 703, 832 P.2d 394. However, while an insurance contract may be comprised of multiple parts setting out those terms, "[it] should be construed as a complete and harmonious instrument designed to accomplish a reasonable end." *Id.* (internal quotation marks and citation omitted); *see also Ullman,* 2023-NMSC-030, ¶ 63 ("The determination of whether specific contractual language violates New Mexico's public policy on stacking depends on the policy language at issue considered in light of the policy as a whole."). In reviewing insurance contracts such as the one at issue here, our primary obligations are to "ensure that the insured's reasonable expectations are met and that an insured gets what he or she pays for and no more." *Montano*, 2004-NMSC-020, ¶ 1.

**{16}** In *Montano*, we "chart[ed] a new course" in our stacking jurisprudence by requiring insurers to obtain written waivers if they wish to preclude stacking in policies insuring multiple vehicles. *See id.* ¶¶ 17-19. We did so to ensure that "insureds will know exactly what coverage they are receiving and for what cost." *Id.* ¶ 21. In *Ullman*, we further clarified that, in order for such waivers to be effective, offers of UM/UIM coverage must include a brief discussion of stacking. *See* 2023-NMSC-030, ¶¶ 41-43. Put simply, our prior case law instructs that an insurer that wishes to preclude the stacking of UM/UIM coverage in a policy insuring multiple vehicles must (1) explain how stacking will affect coverage and premiums; (2) afford the insured an opportunity to obtain additional information about stacking; and (3) secure from the insured an express written waiver of stacking. *See id.*; *see also Montano*, 2004-NMSC-020, ¶ 19.

**{17}** In this case, Allstate secured a written waiver of stacking from Plaintiff. Allstate's waiver explained the effect of stacking, instructed Plaintiff that non-stacked coverage would result in a lower premium, set out the premiums that would be charged for stacked and non-stacked coverage, stated that the premium was a per-policy premium, and instructed Plaintiff to contact an Allstate agent if she had any questions about the coverage or limits set out in the offer. Plaintiff initialed the waiver, choosing the non-stacked option in accordance with its instructions, and affixed her signature. Thus, Allstate complied with the requirements we have established for obtaining a waiver of stacked coverage. *See Montano*, 2004-NMSC-020, ¶ 19 (requiring a written waiver to preclude stacking); *Ullman*, 2023-NMSC-030, ¶ 43 (requiring all offers of coverage to

include a brief explanation of stacking and to afford the insured an opportunity to obtain additional information about stacking).

**{18}** We conclude Allstate secured from Plaintiff a valid waiver of stacked UM/UIM coverage.

**2.      The declaration pages did not render the contract ambiguous**

**{19}** Plaintiff argues that, even if her waiver of stacked coverage was valid, the contract should be reformed to require stacking because the declaration pages rendered the contract ambiguous as to how many premiums she paid for coverage. While we offered the requirement of a written waiver in *Montano* as "a solution to the seemingly inherent ambiguities in anti-stacking clauses," 2004-NMSC-020, ¶ 19, we did not dispense with all inquiries into ambiguity in automobile insurance contracts. "Ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Rummel*, 1997-NMSC-041, ¶ 19.

**{20}** In this case, the Court of Appeals erred in concluding the contract was ambiguous because it focused solely on the declaration pages and failed to begin its analysis with consideration of Plaintiff's signed waiver. *Garcia*, 2024-NMCA-010, ¶ 16. We have instructed insurers wishing to preclude stacking to obtain written waivers because "[w]ith written waivers, insureds will know exactly what coverage they are receiving and for what cost." *Montano,* 2004-NMSC-020, ¶ 21. Yet the Court of Appeals appeared to give the signed waiver little-to-no weight in its analysis of the contract. While the Court noted that Plaintiff had selected non-stacked coverage on the waiver, *Garcia*, 2024-NMCA-010, ¶ 2, it did not analyze the effect of this selection on Plaintiff's claim for reformation of the contract, *see id.* ¶¶ 15-17. Instead, the Court of Appeals relied on our reasoning in a pre-*Montano* case that considered only whether the policy was ambiguous. *See Garcia*, 2024-NMCA-010, ¶ 16 (*citing Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, 118 N.M. 127, 879 P.2d 759, *holding modified by Montano*, 2004-NMSC-020). But *Montano* replaced the "traditional ambiguity analysis, as described in *Rodriguez*," with the written requirement of a waiver of stacking. *See Montano*, 2004-NMSC-020, ¶ 22. Because Allstate secured from Plaintiff a valid waiver, the Court of Appeals should not have undertaken the ambiguity analysis set out in *Rodriguez*.

**{21}** Nor is the contract otherwise ambiguous with respect to whether stacking is permitted. The waiver, the declaration pages, and the policy documents unambiguously communicated that a single premium was charged for *non-stacked coverage*. The two premium amounts listed in the declaration pages ($40.89 for the Tahoe and $48.24 for the Neon), when summed, equal the premium for non-stacked coverage listed on the waiver ($89.13) and therefore represented the total cost to the insured for the two vehicles. The declaration pages included the statement that "Uninsured Motorists Insurance Bodily Injury limits of insured vehicles may *not* be stacked," and a

supplement to the declarations included a reminder that the insured had selected non-stacked coverage.

**{22}** Examining the entirety of the policy documents together, we conclude there was no ambiguity as to the premium paid, the coverage selected, or whether stacking was permitted. *See Ullman*, 2023-NMSC-030, ¶ 63 (instructing that purported ambiguities in UM/UIM offers should be examined in light of the policy documents as a whole). Plaintiff's election will be enforced.

## III.    CONCLUSION

**{23}** We hold that Plaintiff's waiver of stacked UM/UIM coverage was effective and the declaration pages she received from Allstate did not create an ambiguity sufficient to reform the contract. We reverse the decision of the Court of Appeals and remand the matter to the district court for entry of judgment in favor of Allstate.

**{24}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**J. MILES HANISEE, Judge**
**Sitting by designation**