The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: October 2, 2023

**NO. S-1-SC-36580**

**BETTY E. ULLMAN, for herself and others similarly situated,**

Plaintiff-Petitioner,

v.

**SAFEWAY INSURANCE COMPANY,**

Defendant-Respondent,

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge;**

**CONSOLIDATED WITH**

**NO. S-1-SC-37135**

**ANGELA LUERAS and JOE LUERAS individually,**

Plaintiffs-Petitioners,

and

**ANGELA LUERAS and JOE LUERAS, as parents and guardians of A. Lueras, a minor,**

Plaintiffs,

v.

**GEICO GENERAL INSURANCE COMPANY,**

Defendant-Respondent,

and

**MARIA RODRIGUEZ, FARMERS INSURANCE COMPANY OF ARIZONA a/k/a FARMERS INSURANCE GROUP a/k/a FARMERS INSURANCE EXCHANGE,**

Defendants,

**ORIGINAL PROCEEDING ON CERTIORARI Alan Malott, District Judge;**

**CONSOLIDATED WITH**

**NO. S-1-SC-37137**

**DAVID VAN EPPS,**

Plaintiff-Petitioner,

v.

**GEICO INDEMNITY COMPANY,**

Defendant-Respondent,

and

**CESAR MONTANO,**

Defendant.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sarah C. Backus, District Judge.**

Garcia Ives Nowara LLC
Matthew L. Garcia
Albuquerque, NM

Freedman Boyd Hollander Goldberg Urias & Ward, P.A.
David Freedman
Joseph Goldberg
Vincent J. Ward
Albuquerque, NM

The Vargas Law Firm
Ray M. Vargas, II
Albuquerque, NM

O'Connell Law LLC
Erin B. O'Connell
Albuquerque, NM

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

for Petitioner Betty E. Ullman

Butt, Thornton & Baehr, P.C.
Rheba Rutkowski
James H. Johansen
Albuquerque, NM

for Respondent Safeway Insurance Company

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

Widner Law Firm LLC
Susan H. Widner
Albuquerque, NM

O'Connell Law LLC
Erin B. O'Connell
Albuquerque, NM

The Chacon Law Firm
M. David Chacon, II
Albuquerque, NM

for Petitioners Angela Lueras and Joe Lueras

Perry Law, P.C.
Meloney Perry
Stacy Thomson
Dallas, TX

for Respondent GEICO General Insurance Company

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Amicus Curiae Property Casualty Insurers Association of America

Law Office of Anthony G. Lopez
Anthony G. Lopez
Taos, NM

for Petitioner David Van Epps

Chapman and Priest, P.C.
Stephen M. Simone
Jessica C. Singer
Albuquerque, NM

for Respondent GEICO Indemnity Company

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Amicus Curiae Property Casualty Insurers Association of America

**OPINION**

**ZAMORA, Justice.**

{1}     We are asked to revisit the question of what information an insurer must provide in an offer of insurance so that a consumer may make an informed decision about the amount of uninsured/underinsured motorist (UM/UIM) coverage, if any, the consumer might wish to purchase. In *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214, we sought to settle this issue by prescribing "workable requirements" that insurers must meet to ensure their offers of UM/UIM insurance are sufficiently meaningful such that an insured's rejection of such coverage will be deemed effective under New Mexico law. *Id.* ¶ 20. Nonetheless, we conclude that further clarification is needed.

{2}     The primary issue before us is whether insurers, in their offers of coverage, must include information about *stacked* (or aggregated) benefits insureds may be entitled to recover if they pay multiple premiums for UM/UIM coverage on multiple vehicles. We hold that, going forward, insurers must provide basic information about stacking to prospective insureds so that insurers' offers are meaningful and any associated rejections or waivers by insureds are effective.

## I. BACKGROUND

{3}     In each of the cases before us, a consumer purchased an automobile insurance policy providing liability coverage for multiple vehicles but rejected any UM/UIM coverage. Each insured was then involved in an accident with an underinsured or uninsured motorist, and all sought UM/UIM benefits from their insurers. In each case, the insurer denied the claim on the basis that the insured had rejected UM/UIM coverage by signing and returning a selection/rejection form[1] indicating rejection. The insureds then sued for breach of contract, insurance bad faith, and other causes of action, arguing that they should have been provided UM/UIM benefits because their rejections were legally deficient. More specifically, the plaintiffs in these cases argued that, for a rejection of UM/UIM coverage on multiple vehicles to be effective, an insurer must have provided information about stacked coverages in its offer, including information about the premium costs per vehicle. According to the insureds, the defendant-insurers' failures to include such information meant, as a matter of law, that their offers of UM/UIM coverage were not meaningful and the rejections the plaintiffs submitted were ineffective. The plaintiffs also alleged that

---

[1]The form requesting an insured to select or reject UM/UIM coverage is alternately called a "selection/rejection form" and an "option form." For clarity and consistency, we refer to it as a selection/rejection form throughout this opinion.

certain information included in the Defendant-insurers' offers was so misleading as to violate New Mexico law and that UM/UIM insurance must be offered on a per-vehicle basis. We granted certiorari to provide additional clarification as to what constitutes a valid offer and waiver of UM/UIM coverage in New Mexico.

**A.    *Ullman v. Safeway***

{4}    The plaintiff Betty Ullman purchased automotive liability insurance for her two vehicles from Safeway Insurance Company (Safeway) through an insurance broker, choosing liability limits of $25,000 per person/$50,000 per occurrence in bodily injury damages and $25,000 in liability for property damage. According to Safeway, Ullman was informed by the agent that she "could have uninsured motorist bodily injury coverage equal to her bodily injury liability limits for fifty-two dollars ($52.00) for one insured vehicle, or pay twice that amount ($104.00) to have uninsured motorist bodily injury coverage for both insured vehicles." Safeway provided Ullman with a UM/UIM coverage selection/rejection form which contained this information, and she indicated rejection of UM/UIM coverage with an "x" marked next to the rejection language for each of her insured vehicles.

{5}    Ullman does not dispute that she signed the UM/UIM selection/rejection form but does dispute that the agent explained the coverage options to her. She also contends that "[o]nly the endorsement page and policy booklet were provided to

[her]" and that nothing that she was given to take home with her indicated her rejection of UM/UIM coverage.

{6}     After purchasing coverage, Ullman was injured when she was struck by an uninsured motorist while driving one of her insured vehicles. She made a claim to Safeway for UM coverage in the amount of her liability limits, seeking to stack the limits associated with her two vehicles. Safeway denied the claim on the grounds that Ullman had rejected UM/UIM coverage when applying for liability coverage. Ullman then filed a class action complaint against Safeway,[2] alleging breaches of statutory, common law, and contractual duties and seeking damages and declaratory relief. In her complaint, Ullman alleged that Safeway wrongfully denied her, and all similarly situated insureds, UM/UIM benefits available through Safeway's automobile insurance policy because Safeway failed to obtain legally valid rejections of such coverage.

{7}     In response, Safeway filed a motion for summary judgment arguing that it had met all legal requirements in securing Ullman's rejection of UM/UIM insurance. Safeway contended that by offering Ullman UM/UIM coverage in amounts up to her liability limits, informing her of the premium costs per vehicle, securing her

---

[2]Ullman also sued the uninsured driver of the vehicle responsible for her injuries. Those claims are not before us.

4

signature on the UM/UIM selection/rejection form, and providing her with a copy of the policy and declaration page, it had complied with the requirements under New Mexico law for securing an effective rejection.

{8}     Ullman filed a response to Safeway's motion, arguing that disputed issues of material fact precluded summary judgment in the case and that Safeway had not made a meaningful offer of UM/UIM coverage because it failed to inform Ullman, and those similarly situated, that they were "entitled to purchase stacked (or aggregated) coverage" amounting to multiples of their individual liability limits.

{9}     The district court held a hearing on Safeway's motion. Finding there were disputed issues of material fact as to whether Ullman knowingly and intelligently decided to reject UM coverage "among other issues of fact that may arise" around the selection/rejection form, the court denied the motion.

{10}     Safeway then filed a second motion for summary judgment to dismiss Ullman's class claims, arguing again that its selection/rejection form complied with New Mexico law and Ullman was an improper representative of the putative class. Ullman opposed Safeway's motion and moved to certify a class of all New Mexico residents having automobile insurance with Safeway, for whom Safeway did not obtain valid rejections of UM/UIM coverage. She defined an invalid rejection as "one which did not include an offer of UM/UIM limits up to the liability limits and

a disclosure of premium amount for each available level of coverage, including stacked coverage."

{11}   The district court denied Safeway's second motion for summary judgment and granted Ullman's motion to certify the class. In so doing, the court determined that the question whether Safeway had complied with New Mexico law in obtaining legally effective rejections of UM/UIM coverage, including stacked coverage, predominated over individual claims that might be advanced by members of the proposed class. Safeway filed an application with the Court of Appeals for interlocutory appeal of the district court's orders denying Safeway's motion for summary judgment opposing class certification and granting Ullman's motion for class certification. Safeway's application asserted that because the validity of UM/UIM rejection by an insured is "individualized" for each insured, Ullman "cannot adequately represent the interests" of such a class. The Court of Appeals granted the application for interlocutory appeal "on the controlling question . . . whether [Safeway] . . . complied with New Mexico law in obtaining waivers of UM/UIM coverage."

**B.   *Lueras v. GEICO***

{12}   The plaintiffs Angela and Joe Lueras (collectively the Luerases) purchased automobile liability insurance from the defendant GEICO General Insurance

Company (GEICO) for three vehicles. Like Ullman, the Luerases rejected UM/UIM coverage by completing a selection/rejection form when initiating coverage. At some time after this initial rejection, they added a fourth vehicle to their policy, and GEICO sent them a new selection/rejection form with updated information about coverages and premiums. The Luerases did not complete this form.

{13}     After purchasing the GEICO policy and during the policy period covering all four vehicles, Mrs. Lueras and her child were driving in one of her insured vehicles and were struck by an underinsured motorist and severely injured, incurring damages that the Luerases aver are beyond the tortfeasor's liability limits. The Luerases made a claim to GEICO for UIM coverage but were denied on the grounds that they had rejected it. They then filed a complaint against GEICO,[3] alleging statutory and common law claims arising from GEICO's denial of their claim for UIM coverage and seeking damages and declaratory relief.

{14}     The parties filed competing motions for summary judgment. GEICO argued in its motion that it was entitled to summary judgment because its selection/rejection form met all legal requirements, the Luerases declined to select UM/UIM coverage when they initiated coverage and never changed this election prior to the accident,

---

[3]The Luerases also sued the driver of the vehicle that injured Mrs. Lueras and her child, as well as the driver's insurer, Farmers Insurance Co. Those claims are not before us.

and in the absence of a valid breach of contract claim, the Luerases could not establish insurance bad faith. The Luerases opposed GEICO's motion and filed a cross-motion for summary judgment. Their primary argument was that GEICO's selection/rejection form failed to adequately provide an insured with information about stacked coverages available in a multiple-vehicle policy. They also contended that GEICO's requirement of an insured to purchase UM/UIM "on an all or nothing basis" violates New Mexico law, that GEICO misrepresents to insureds that stacking is never available to them, that the selection/rejection form signed by the Luerases in 2009 was ineffective in rejecting UM/UIM coverage when they added a fourth vehicle to their policy, and that GEICO misrepresents the amount of coverage that has been rejected on its declarations page because the amount represents the single limit of coverage rather than the amount recoverable after stacking coverages on multiple vehicles.

{15} The district court granted GEICO's motion and denied the Luerases' motion, concluding that GEICO's selection/rejection form complied with New Mexico law because it provided "a menu of available coverage options and the premiums associated with each available level of coverage up to the maximum liability limits." The court determined that the form did not have to include an explanation of stacking, concluding that such information was not required under existing law.

8

Having found an effective rejection of UM/UIM coverage, the court further ruled that GEICO's "all or nothing" offers of UM/UIM coverage and the limitation of liability clause in its policy only implicated New Mexico's stacking jurisprudence and therefore the offers were valid. The court noted that "[a]lthough stacking and the availability of UM/UIM coverage both may affect the amount of benefits available under a policy, they are separate inquiries" and "[t]he question of stacking arises only if the insured purchases UM/UIM coverage or if a rejection of UM/UIM coverage is invalid." The Luerases appealed.

## C.    *Van Epps v. GEICO*

{16}    David Van Epps initiated coverage with GEICO Indemnity Company when his wife, Wendy Van Epps, submitted an online application through GEICO's[4] website requesting insurance on their three vehicles. In her application, Wendy Van Epps selected UM/UIM coverage in an amount lower than the bodily injury liability limits she had selected. Shortly thereafter, GEICO sent the Van Eppses a new business packet, which included a letter instructing them they needed to return a

---

[4]We identify both GEICO General Insurance Company, the defendant-insurer for the Luerases, and GEICO Indemnity Company, the defendant-insurer for Van Epps, as GEICO. Hereinafter, a reference to GEICO is a reference to either or to both entities unless a distinction between them requires identifying GEICO as one or the other specifically.

signed selection/rejection form "to complete the processing of [their] new policy" that included a recently added fourth vehicle. The Van Eppses returned the form, which was identical to the selection/rejection forms sent to the Luerases, checking the box indicating they rejected UM/UIM coverage. They later renewed the policy several times, each time indicating rejection of UM/UIM coverage.

{17}    After initiating coverage, David Van Epps was severely injured when he was struck as a pedestrian by a vehicle driven by an underinsured motorist. He sought UIM coverage from GEICO, was denied, and sued in district court alleging negligence and breach of contract and seeking damages and declaratory relief.[5] As in the Luerases' proceedings, the parties brought competing motions for summary judgment. GEICO argued that it had complied with all legal requirements in securing a waiver of UM/UIM coverage from the Van Eppses, who consequently "had no reasonable expectation of coverage under the circumstances." David Van Epps argued that GEICO's forms do not constitute a meaningful offer of UM/UIM coverage because "a meaningful offer of coverage must provide information about the availability of stacking, an insured's ability to waive stacking, and corresponding premium costs associated with the same." He attached an affidavit from Wendy Van

---

[5]Van Epps also sued the underinsured motorist who injured him. Those claims are not before us.

10

Epps asserting that, had she known she could have selected different amounts on different vehicles and could stack coverage, she would not have rejected UM/UIM coverage entirely.

{18} Following a hearing on the competing motions, the district court granted GEICO's motion, finding GEICO's selection/rejection form was legally adequate to secure a rejection of UM/UIM coverage and was not ambiguous. The court also rejected Van Epps's argument that an explanation of stacking was required because "stacking does not apply unless there is coverage." Van Epps appealed.

**D.    The Court of Appeals' Opinions**

**1.    *Ullman v. Safeway***

{19} The Court of Appeals reversed the district court's denial of Safeway's motion to dismiss Ullman's class claims. *Ullman v. Safeway Ins. Co.*, 2017-NMCA-071, ¶¶ 2, 59, 404 P.3d 434. The Court first reviewed the legal requirements governing UM/UIM offers and rejections, including NMSA 1978, Section 66-5-301 (1983) and its implementing regulation, 13.12.3.9 NMAC, as well as opinions in which we have had occasion to interpret those provisions. *Ullman*, 2017-NMCA-071, ¶¶ 6-15. In light of this body of law and based on its review of the record identifying the documents Safeway provides to insureds in its offers of UM/UIM coverage, the Court held on this controlling question that Safeway had "obtained valid rejections

11

of UM/UIM coverage in compliance with New Mexico law" but left, for the district court to address, "any remaining class-related issues." *Id.* ¶ 2.

{20} The Court rejected Ullman's contention that an insurer must inform the insured of the total amount of stacked coverage available. *Id.* ¶ 43. Endorsing the reasoning of the Tenth Circuit in *Jaramillo v. Government Employees Insurance Co.*, 573 F. App'x 733 (10th Cir. 2014) (nonprecedential), the Court concluded that nothing in New Mexico's UM/UIM jurisprudence requires an insurer to provide an explanation of the operation or effects of stacking in an offer of UM/UIM coverage. *Ullman*, 2017-NMCA-071, ¶¶ 34-38, 43. The Court also rejected Ullman's contention that because Safeway's limitation of liability clause "can be read to be an anti-stacking clause," the offer was ambiguous "as to whether Ullman could receive the full benefit of the UM/UIM" coverage offered in the selection/rejection form. *Id.* ¶ 47.

{21} The Court of Appeals remanded to the district court for a determination of the remaining claims, including whether to preserve the district court's prior class certification. *Id.* ¶¶ 58-59.

**2.** ***Lueras v. GEICO* and *Van Epps v. GEICO***

{22} The Court of Appeals consolidated the appeals in *Lueras* and *Van Epps* and affirmed the district court in both cases. *Lueras v. GEICO Gen. Ins. Co.*, 2018-

NMCA-051, ¶¶ 1, 3, 424 P.3d 665. First, it held that *Ullman* controlled the Luerases' and Van Epps's claims related to stacking and therefore the policies could not be stacked. *Id.* ¶¶ 2-3, 11. The Court also rejected the Luerases' and Van Epps's claims that GEICO was required to offer UM/UIM insurance on a per-vehicle basis, finding nothing in New Mexico law authorizing such a requirement. *Id.* ¶¶ 13-18. Next, the Court concluded that GEICO was not required to obtain new rejections of coverage when the Luerases added a new vehicle to their existing policy, reaffirming the holding of *Vigil v. Rio Grande Insurance of Santa Fe*, 1997-NMCA-124, ¶ 16, 124 N.M. 324, 950 P.2d 297. *Lueras*, 2018-NMCA-051, ¶¶ 19-22. Finally, the Court disagreed with Van Epps's claim that the letter GEICO sent to Wendy Van Epps requesting that she return a signed selection/rejection form "improperly discouraged the purchase of UM/UIM coverage." *Id.* ¶ 26. The Court of Appeals "affirm[ed] the district courts'. . . denials of the [Luerases' and Van Epps's] . . . summary judgment" claims. *Id.* ¶ 27.

{23} The special concurrence disagreed with the *Ullman* Court's reliance on the Tenth Circuit's opinion in *Jaramillo*, but concurred in the result because *Ullman* was binding on the Court of Appeals unless and until this Court holds otherwise. *Lueras*, 2018-NMCA-051, ¶¶ 30-36 (Attrep, J., specially concurring). According to the special concurrence, the fact that GEICO stacks UM/UIM benefits should have been

disclosed to the Van Eppses and Luerases in GEICO's UM/UIM selection/rejection form, and GEICO's failure to do so precluded the insureds from making a meaningful and intelligent decision whether to select or reject coverage. *Id.* ¶¶ 34-35 (Attrep, J., specially concurring).

{24}   The Ullman, Lueras, and Van Epps plaintiffs each appealed the Court of Appeals' decisions, and we granted certiorari to further clarify this vexing area of our jurisprudence.

**II.   DISCUSSION**

{25}   Each of the cases before us poses multiple questions on certiorari. Distilled to their essences, however, Plaintiffs advance five distinct arguments: (1) Defendant-insurers' UM/UIM selection/rejection forms fail to comply with New Mexico law because they do not disclose information about stacked benefits that an insured may be entitled to receive in a multivehicle policy, (2) the addition of a new vehicle to an existing policy triggers a new offer of insurance, such that Defendant-insurers should be required to obtain a (new) legally valid waiver of UM/UIM coverage from the insured, (3) Defendant-insurers' "Limits of Liability" clauses amount to antistacking provisions that are per se illegal or create an ambiguity when considered in relation to the UM/UIM selection/rejection form, (4) GEICO's form letter and waiver form was misleading and discouraged the Van Eppses' purchase of UM/UIM coverage,

14

and (5) Defendant-insurers impermissibly require insureds to select UM/UIM coverage for multiple vehicles on an "all or nothing" basis. As we explain, while each of these arguments was raised in some form in Plaintiffs' briefings before the district courts hearing these matters, and while the Court of Appeals addressed all of them on appeal, only the first two are squarely before us.

**A.     Standard of Review**

{26}     We review claims requiring the interpretation of insurance policy language de novo. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 60, 123 N.M. 752, 945 P.2d 970 ("The interpretation of an insurance contract is a matter of law about which the court has the final word."). Where the relevant facts are undisputed, the interpretation of "Section 66-5-301 and 13.12.3.9 NMAC in order to determine the form and manner that offers and rejections of UM/UIM coverage must take" presents questions of law that we review de novo. *Jordan*, 2010-NMSC-051, ¶ 14. Finally, a district court's grant of summary judgment is also subject to de novo review. *Farmington Police Officers Ass'n Commc'n Workers of Am. Loc. 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204. "Under this standard of review, we step into the shoes of the district court, reviewing the motion, the supporting papers, and the non-movant's response as if we were ruling on the motion in the first instance." *Id.*

**B.** **To Secure a Knowing and Intelligent Waiver of UM/UIM Coverage, an Insurer Must Explain That, in the Event of a Covered Loss, the Insured's Policy May Entitle Them to Stack Coverages on Multiple Vehicles**

{27} The primary issue before us is whether New Mexico law requires an insurer to disclose in its UM/UIM selection/rejection form that an offer to insure multiple vehicles, for which an insurer will charge multiple premiums, will result in *stacked* or aggregated benefits in the event of a covered loss. Here, each of the Plaintiffs rejected UM/UIM benefits by signing the insurer's selection/rejection form. Notwithstanding these affirmative acts of rejection, Plaintiffs contend they did not, and could not, reject coverage as a matter of law because the forms failed to inform them that, had they selected UM/UIM coverage for multiple vehicles, they would have been entitled to stack the single coverage limits for each vehicle.

{28} GEICO and Safeway contend nothing in New Mexico statutes or case law requires insurers to explain stacking on their UM/UIM selection/rejection forms, their forms otherwise comply with all legal requirements, and Plaintiffs' rejections of UM/UIM coverage were therefore effective. They argue our UM/UIM jurisprudence makes clear that an offer must only reference the maximum amount of UM/UIM coverage statutorily available, which is the liability limit selected by the insured.

{29} Intrapolicy stacking is a judicial remedy and now a common industry practice favored (although not mandated) in New Mexico. *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 17, 135 N.M. 681, 92 P.3d 1255. Stacking "refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." *Morro v. Farmers Ins. Grp.*, 1988-NMSC-006, ¶ 5, 106 N.M. 669, 748 P.2d 512. For example, an insured who purchases UM/UIM insurance for two vehicles in the amount of $50,000 per person/$100,000 per occurrence, and pays two premiums for such coverage, may be permitted to stack the two coverages and receive benefits of up to $100,000/$200,000 for a covered loss. *See Lopez v. Found. Rsrv. Ins. Co.*, 1982-NMSC-034, ¶¶ 1, 25, 98 N.M. 166, 646 P.2d 1230 (holding that an insured who paid two separate premiums for coverage in the amount of $30,000 per accident would be entitled to stack two $30,000 coverages), *holding modified on other grounds by Montano*, 2004-NMSC-020, ¶ 1. Resolving whether an insurer must disclose in its UM/UIM selection/rejection form that an offer to insure multiple vehicles will result in stacking requires us to interpret Section 66-5-301 and its implementing regulation, 13.12.3.9 NMAC. Section 66-5-301(A) provides, in part:

> No motor vehicle or automobile liability policy . . . shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle

17

registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in [NMSA 1978,] Section 66-5-215 [(1983)] and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . .

Section 66-5-301(B) makes the statute applicable to policies covering underinsured motorists who cause injury or damages to insureds. Section 66-5-301(C) provides:

The named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

The implementing regulation addresses the manner of rejection of UM/UIM coverage, establishing that a rejection "must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC.

{30}    Nothing in the plain language of Section 66-5-301 or 13.12.3.9 NMAC expressly requires insurers to provide an explanation of stacking or how it might

18

increase an insured's benefits.[6] The relevant portion of Section 66-5-301 requires only that UM/UIM coverage be offered

> in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy.

Section 66-5-301(A).[7] As we have noted, its implementing regulation requires that a rejection of UM/UIM coverage be in writing and included with the policy documents. *See* 13.12.3.9 NMAC.

{31}    However, our inquiry does not end there, as we have always interpreted the uninsured motorist statute liberally "to implement [the] purpose of compensating those injured through no fault of their own." *Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 9, 87 N.M. 327, 533 P.2d 100. We do so to "ensure that the

---

[6]Plaintiffs largely decline to make a textual argument in this case. The closest version of such an argument is offered by Ullman who, relying in part on a rule of construction that permits the substitution of a plural term for a singular term in a statute, NMSA 1978, § 12-2A-5(A) (1997), suggests that we may read the phrase "limits of liability" in Section 66-5-301(A) to mean "the sum total of all liability limits and coverages in the policy." Here, Ullman asks us to change several words in, and add others to, Section 66-5-301(A) in order to establish a new statutory requirement. We determine this stretches the boundaries of textualism too far.

[7]Section 66-5-215(A) establishes that the minimum limits of liability are $25,000 per person/$50,000 for two or more persons in bodily injury damages and $10,000 per occurrence in property damages.

insured's reasonable expectations are met and that an insured gets what he or she pays for and no more." *Montano*, 2004-NMSC-020, ¶ 1; *see also Jimenez v. Found. Rsrv. Ins. Co.*, 1988-NMSC-052, ¶ 10, 107 N.M. 322, 757 P.2d 792 (noting the public policy in favor of interpreting insurance contracts to ensure the purchased coverages meet the insured's "reasonable expectations").

{32}    In *Montano*, we addressed whether insurers may prohibit the stacking of benefits by including antistacking language in their policy documents. 2004-NMSC-020, ¶ 1. Although stacking is not mentioned in the UM/UIM statute, we reiterated that New Mexico had long recognized a strong public policy in favor of the practice and held that insurers may only prohibit stacking as a remedy for a loss if they first secure a written rejection of stacking from the insured. *Id.* ¶¶ 1, 9. Nevertheless, we declined to declare all antistacking language void as against public policy or to make stacking mandatory in every case, concluding that such a requirement might price some potential insureds out of the UM/UIM market. *Id.* ¶¶ 15-16. We also observed that permitting some flexibility with respect to stacking could benefit insureds by ensuring the availability of low-cost options to consumers seeking lower premiums. *Id.* ¶ 16. "[T]ak[ing] guidance from Section[] 66-5-301(A) and (C), . . . we discern[ed] a solution to the seemingly inherent ambiguities in anti-stacking clauses: an insurance company should obtain written rejections of stacking in order to limit

20

its liability based on an anti-stacking provision." *Id.* ¶ 19. We expressed the hope that our decision would help to ensure that, going forward, insureds would receive the benefit of the premiums they had paid—no more, and no less. *Id.* ¶¶ 15, 18, 20.

{33}   Our case law setting out the requirements for valid offers and rejections of UM/UIM insurance coverage has also sought to advance the legislative purpose of encouraging the purchase of such coverage among New Mexico motorists. In *Marckstadt v. Lockheed Martin Corp.*, we held that, to secure a valid waiver of UM/UIM coverage, an insurer must obtain a written rejection from the insured because, while such a requirement "does not appear on the face of the statute," it clearly advances its purpose. 2010-NMSC-001, ¶ 16, 147 N.M. 678, 228 P.3d 462. We determined that a knowing and intelligent rejection of UM/UIM coverage requires an affirmative act on the part of the insured. *Id.* ¶¶ 15-16.

{34}   In *Progressive Northwestern Insurance Co. v. Weed Warrior Services*, we further expanded the concept of a "meaningful offer of UM/UIM coverage," concluding that it must include not only the minimum amount of UM/UIM coverage permitted by statute but also "the maximum amount of UM/UIM coverage permitted by the statute, e.g., the liability limits of the policy." 2010-NMSC-050, ¶¶ 8, 11, 14, 149 N.M. 157, 245 P.3d 1209. We determined that such a rule is "consistent" with the policy encouraging insureds to purchase UM/UIM coverage. *Id.* ¶ 12. "Recalling

21

that Section 66-5-301 is a remedial statute that must be construed liberally," we also held that an insured's choice to select an amount lower than the liability limit functions as a rejection of the maximum amount of coverage. *Id.* ¶¶ 14, 15.

{35} Finally, in *Jordan*, we "prescribe[d] workable requirements for a valid and meaningful rejection of UM/UIM coverage" to insurers, 2010-NMSC-051, ¶¶ 20-21, and stated,

> If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

*Id.* ¶ 22. Our intention in setting out these requirements and stating that failure to meet them would result in reformation of the contract was to provide a definitive guide to insurers as to what they must do to secure a legally binding rejection of coverage. *Id.* ¶ 25. Seeking to ensure that insureds could "make a realistically informed choice," we articulated clear "requirements for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute." *Id.* ¶ 20.

{36} Plaintiffs challenge the rejections executed in these three cases on the grounds that Defendant-insurers failed to make meaningful offers of UM/UIM coverage, in violation of our UM/UIM jurisprudence. They contend that an offer of UM/UIM

22

insurance that does not include an explanation of stacking is not meaningful and that it discourages consumers from purchasing UM/UIM insurance, in contravention of the legislative purpose of Section 66-5-301. They argue that, because Defendant-insurers stack coverages as a matter of course, if an insured pays multiple premiums for UM/UIM coverage on multiple vehicles, the actual maximum amount of coverage available is the amount of coverage that would result from stacking. *See Weed Warrior*, 2010-NMSC-050, ¶¶ 14-15 (holding that an offer of UM/UIM coverage must include the maximum amount of coverage statutorily available and that an insured's election of a lower amount acts as a rejection of that maximum amount); *Jordan*, 2010-NMSC-051, ¶ 2 (holding that "insurers must provide the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled"). Accordingly, Plaintiffs argue that insurers' failure to provide an explanation of stacking deprives insureds of information that is essential to a knowing and intelligent waiver of UM/UIM coverage.

{37} Defendant-insurers respond Plaintiffs have misread *Weed Warrior* and *Jordan* by ignoring language in both opinions that establishes that the maximum amount of coverage insurers are required to offer is that which is "statutorily available"—that

is, an amount equal to the liability limits of the policy. They observe that there is a difference between maximum available *coverage* and the maximum *benefits* that an insured may obtain following a loss and argue that New Mexico's rules governing valid offers and rejections apply only to the former. They note *Jordan*'s "'workable requirements'" for a valid UM/UIM insurance offer and rejection do not mention stacking.

{38} Two of the three district courts agreed with the insurers and found that *Jordan* controls and does not require disclosure of stacked benefits on UM/UIM offer or selection/rejection forms. In *Jaramillo*, the Tenth Circuit held similarly. 573 F. App'x at 749. In that case, the panel focused exclusively on the question of whether GEICO's selection/rejection form (identical to those at issue in *Lueras* and *Van Epps* and materially very similar to Safeway's form) was adequate under New Mexico law. *Jaramillo*, 573 F. App'x at 741. It concluded that *Jordan*'s requirements govern offers and waivers of UM/UIM coverage and that, while those requirements incorporated *Montano*'s instruction that premiums be disclosed, they did not "expressly require that the Option Form provide the premium costs corresponding to the available levels of *stacked* coverage." *Id.* at 748. The *Jaramillo* Court "decline[d] to graft the crucial word 'stacked' onto [*Jordan*'s] holding." *Id.* at 744 n.9.

{39}	The clearest articulation of a contrary analysis comes from the special concurrence in *Lueras*, which viewed the *Jaramillo* Court's analysis as overly mechanical. 2018-NMCA-051, ¶ 31 (Attrep, J., specially concurring). The special concurrence stated that because GEICO stacks coverage, its failure to disclose the stacked coverages available to insureds "runs afoul of the guiding principle behind *Jordan*—that 'in order for the offer and rejection requirements of [the UM/UIM statute] to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from the policy.'" *Id.* ¶ 35 (Attrep, J., specially concurring) (alteration in original) (quoting *Marckstadt*, 2010-NMSC-001, ¶ 16). Accordingly, the failure to include a disclosure of stacking in the selection/rejection form means insureds are inadequately informed about what they are giving up when they reject coverage because they are not given information about what the insurer is "*actually* offering." *Id.*

{40}	We find authority in our UM/UIM jurisprudence in support of either approach. For example, in describing our "workable requirements" as prescriptive, we clearly communicated our intention that they be strictly adhered to by insurers to settle the question as to what was required to secure effective rejections of UM/UIM coverage. *Jordan*, 2010-NMSC-051, ¶ 20 ("Accordingly, we find it necessary to

25

prescribe workable requirements for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute."); *id.* ¶ 25 ("In these cases we detail for the first time the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits.").

{41}     On the other hand, "in order for the offer and rejection requirements of [the UM/UIM statute] to effectuate the policy of expanding UM/UIM coverage, the insurer [must] *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from the policy." *Marckstadt*, 2010-NMSC-001, ¶ 16. "The courts of New Mexico assume the average purchaser of automobile insurance 'will have limited knowledge of insurance law,' and we will not impose on the consumer an expectation [of] an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company." *Weed Warrior*, 2010-NMSC-050, ¶ 13. While Section 66-5-301's requirement that every insurance policy issued in New Mexico must offer UM/UIM coverage in minimum and maximum amounts speaks of single limits of liability (per person or per occurrence), the purchase of coverage on multiple vehicles through payment of multiple premiums will enhance the value of an insured's premiums if stacking is permitted under the policy. We therefore agree with Plaintiffs that, because insurers stack benefits in most cases where multiple

26

vehicles are insured,[8] insurers should provide information about stacking to consumers to ensure that they understand what they may be waiving in rejecting UM/UIM coverage. By providing material information about the benefits an insured may actually receive when purchasing UM/UIM coverage on multiple vehicles, an explanation of stacking may encourage some consumers to purchase UM/UIM insurance where they might otherwise demur, advancing the legislative purpose of Section 66-5-301. *See Padilla v. Dairyland Ins. Co.*, 1990-NMSC-025, ¶ 4, 109 N.M. 555, 787 P.2d 835 ("'The purpose of the Mandatory Financial Responsibility Act . . . is to require and encourage residents of the state of New Mexico . . . to have the ability to respond in damages to [motor vehicle] accidents.'" (quoting NMSA 1978, § 66-5-201.1 (1983, amended 1998) of the Mandatory Financial Responsibility Act)). The purpose of the UM/UIM statute is best advanced when insureds are provided clear, comprehensible information about the costs and benefits of offered coverages; under this approach, "'those who want stacked coverage pay for it, and those who don't want it don't pay for it.'" *Montano*, 2004-NMSC-020, ¶

---

[8]*See Lopez*, 1982-NMSC-034, ¶ 21 ("Whether stacking is to be permitted depends on the evidence presented in each case."); *Montano*, 2004-NMSC-020, ¶ 15 (recognizing that insurers may decline to stack benefits "when the policy clearly only charges a single premium and unambiguously precludes stacking").

27

18 (quoting *U.S. Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77, 84 (Miss. 1997) (Lee, C.J., specially concurring)).

{42} Our interpretation of Section 66-5-301 in *Jordan* and *Weed Warrior* was grounded firmly in the imperative to construe the statute "liberally" to achieve its "remedial purpose[]." *Jordan*, 2010-NMSC-051, ¶ 15; *see Weed Warrior*, 2010-NMSC-050, ¶ 14. Indeed, because the text of Section 66-5-301 has often provided insufficient guidance in answering the questions that come before us, the imperative to further the statute's legislative purpose has directed our UM/UIM decisions. For example, we have held that the legislative purpose of expanding UM/UIM coverage demands that, where a rejection of UM/UIM coverage fails to adhere to regulatory requirements, such coverage must be read into the policy when the insured files a claim for the benefits. *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶¶ 6-9, 111 N.M. 154, 803 P.2d 243. Similarly, in *Weed Warrior*, we "[r]ecall[ed] that Section 66-5-301 is a remedial statute that must be construed liberally" in holding that the choice by an insured to purchase UM/UIM insurance in an amount lower than the policy limits "functions as a rejection of th[e] maximum amount of coverage statutorily possible." 2010-NMSC-050, ¶¶ 14-15.

{43} We therefore conclude that our resolution of this issue requires us to balance a recognition of the formal requirements we set forth in *Jordan* with the practical

28

reality that the routine stacking of benefits in New Mexico may increase the value of an insured's premium payment. We hold that, in recognition of the practical reality that insurers now permit stacking as a matter of course in New Mexico, offers of UM/UIM insurance going forward must include a brief discussion of stacking. However, insurers need not set out a matrix of all stacking possibilities in their offers of UM/UIM coverage to adequately inform insureds of the potential effects of stacking. A declaration that clarifies that an insured who purchases insurance on multiple vehicles and pays multiple premiums would be entitled to stack benefits in the event of a covered loss and affords the insured an opportunity to obtain additional information about stacking will satisfy this requirement. We impose this requirement to ensure that coverages meet the consumers' reasonable expectations. *See Jimenez*, 1988-NMSC-052, ¶ 10.

**C.  Our Application of This Holding Is Selectively Prospective**

{44}  We next consider whether to apply this holding retroactively or prospectively. "It is within the inherent power of a state's highest court to give a decision prospective or retrospective application without offending constitutional principles." *Lopez v. Maez*, 1982-NMSC-103, ¶ 17, 98 N.M. 625, 651 P.2d 1269. While we observe "a presumption of retroactivity for a new rule [adopted] in a civil case," this presumption "may be overcome by a sufficiently weighty combination" of several

29

factors: (1) whether the decision to be applied prospectively establishes a new principle of law, (2) whether retroactive operation will advance or inhibit the operation of the new rule, and (3) whether retroactive application may "produce substantial inequitable results." *Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶¶ 22-23, 118 N.M. 391, 881 P.2d 1376 (internal quotation marks and citation omitted).

{45} With respect to the first factor, Plaintiffs contend the requirement that insurers include an explanation of stacking on an offer of UM/UIM coverage does not constitute a new rule. They argue that our discussion of a hypothetical offer in *Montano* established that all offers of UM/UIM insurance for multiple vehicles must disclose each of the stacked liability limits available for purchase and their associated premiums. They point to a hypothetical offer we described in *Montano*, which stated:

> As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages.

30

2004-NMSC-020, ¶ 20. Plaintiffs contend the phrase "the insurer *shall* declare the premium charge for each of the three UM coverages," *id.* (emphasis added), along with the description of stacked coverages, established a rule requiring disclosure of stacking in all UM/UIM offers.

{46} We disagree. In *Montano*, we addressed whether an insurer could enforce a limitation-of-stacking clause that would have permitted the insured to stack coverages from only two of the four vehicles he had insured. *Montano*, 2004-NMSC-020, ¶¶ 3-7. We did not consider the question whether the insurer's offer of UM/UIM insurance was valid under New Mexico law, and "cases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (internal quotation marks and citation omitted). Plaintiffs also ignore the language in *Montano* preceding the hypothetical, clarifying its inclusion "[a]s an illustration of our holding," 2004-NMSC-020, ¶ 20, which is that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision." *Id.* ¶ 19.

{47} Defendant-insurers were not unreasonable in relying on our prior decisions in determining that a disclosure of the effects of stacking was not required in offers of UM/UIM coverage. *See Beavers*, 1994-NMSC-094, ¶ 27 ("The extent to which the parties in a lawsuit, or others, may have relied on the state of the law before a law-

31

changing decision has been issued can hardly be overemphasized."). Having considered this first factor on presumption of retroactivity, we therefore conclude that the requirement to disclose information about stacking in offers of UM/UIM insurance favors prospective application as it is "a new, and not easily foreshadowed aspect to our jurisprudence." *Montano*, 2004-NMSC-020, ¶ 22.

{48} Addressing the second factor, the purpose of the stacking disclosure rule we announce in this opinion is to provide potential insureds with the information they need to make an intelligent and informed decision whether to purchase or reject UM/UIM coverage. *See Marckstadt,* 2010-NMSC-001, ¶ 16. Retroactive application of the stacking disclosure rule would not advance this purpose for those insureds who would be receiving this information in light of a loss already suffered. *See generally Beavers*, 1994-NMSC-094, ¶¶ 34-35 (stating that the deterrence purpose would not be advanced by retroactive application of prima facie tort rule because it could not deter conduct that had already occurred). On the other hand, retroactive application of the rule would serve a compensatory purpose, *id.*, and accordingly "provide meaningful enforcement of the requirements of Section 66-5-301 . . . ensuring that every insured has been afforded his or her statutory right to either obtain UM/UIM insurance coverage equal to the liability limits of the policy or to make a knowing and intelligent rejection of part or all of that coverage." *Jordan*,

2010-NMSC-051, ¶ 28. Considering these purposes together, we conclude that the second factor weighs neutrally. *Beavers*, 1994-NMSC-094, ¶ 35.

{49} Third, we consider whether it would be inequitable to apply the stacking disclosure rule retroactively to Defendant-insurers. *Id.* ¶ 23. "The greater the extent a potential defendant can be said to have relied on the law as it stood at the time he or she acted, the more inequitable it would be to apply the new rule retroactively." *Id.* ¶ 38. As we have stated, we do not consider it unreasonable for Defendant-insurers to have relied on language in our earlier decisions to conclude that their offers need not include stacking disclosures. Additionally, our statement in *Jordan* that we were "prescrib[ing]" the requirements "for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute" may have suggested to insurers that the enumerated requirements—which did not mention stacking—were conclusive. *Jordan*, 2010-NMSC-051, ¶ 20. Although Defendant-insurers may be in a better position than insureds to bear the costs associated with enforcement of the new requirement, we cannot say that this is an instance in which insurers failed to ensure their compliance with existing law, thereby mitigating any inequity. *See id.* ¶ 29 ("[W]e deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended

33

beneficiaries."). Moreover, "[t]he reliance interest to be protected by a holding of nonretroactivity is strongest in commercial settings, in which rules of contract and property law may underlie the negotiations between or among parties to a transaction." *Beavers*, 1994-NMSC-094, ¶ 28. Accordingly, we again conclude in favor of prospective application of the rule: it would be inequitable to apply the stacking disclosure requirement to Defendant-insurers "before [they have] had an opportunity to [ensure compliance]." *Montano*, 2004-NMSC-020, ¶ 22.

{50} On balance, we conclude that the stacking disclosure rule we announce in this opinion should be applied prospectively. However, we have recognized that pure prospectivity—where a new rule of law is applied only to conduct arising after the issuance of our mandate—is rarely appropriate. *See Beavers*, 1994-NMSC-094, ¶ 18 n.7. Instead, "[w]e have repeatedly held that certain decisions would be given 'selective' or 'modified' prospective effect," applying to the litigants in the case giving rise to the new rule and "thereafter only to parties whose conduct occurs after the announcement." *Id.* ¶ 18 & n.7. Because this case has "afforded us the opportunity to change an outmoded and unjust rule of law," we conclude that our decision should apply with *selective* prospectivity. *See Lopez*, 1982-NMSC-103, ¶ 18.

{51} Accordingly, we reverse the Court of Appeals' determinations in *Ullman* and *Lueras* that Defendant-insurers' failure to include an explanation of stacking in their offers of UM/UIM coverage did not render Plaintiffs' rejections invalid in those cases. *Ullman*, 2017-NMCA-071, ¶¶ 42-44, 59; *Lueras*, 2018-NMCA-051, ¶¶ 10-11.

**D.  An Insurer Need Not Obtain a New Rejection of UM/UIM Coverage When an Insured Adds a Vehicle to an Existing Policy**

{52} The Luerases contend that GEICO did not secure an effective rejection of UM/UIM coverage from them because GEICO failed to obtain a new rejection of coverage after the Luerases added a vehicle to their existing policy. According to the Luerases, when a new vehicle is added to a policy "there is necessarily a change in the levels of UM/UIM coverage available to the insured, and a change in the corresponding costs associated with each level of coverage" and there can be no rejection unless information about coverages and costs is provided to the insured. Thus, the Luerases ask us to revisit *Vigil*, which held that an insurer need not obtain a new rejection of UM/UIM coverage when insureds add an additional vehicle to their existing policy. 1997-NMCA-124, ¶ 16. They argue that the rule announced in *Vigil* is inconsistent with our later holdings in *Montano* and *Jordan* in which we "made clear, years after the Court of Appeals decision in *Vigil*, that there can be no valid UM/UIM [rejection] where an insured is not provided information regarding

35

all levels of UM/UIM coverages available and the costs for the same." Alternatively, the Luerases contend that the blank selection/rejection form sent to insureds seeking to add a vehicle is ambiguous because it states, "If a box is not checked, I understand that UM/UIM Bodily Injury Coverage will be issued with limits equal to the Bodily Injury Liability Limits of my policy and my UM Property Damage Coverage will be issued with limits of $10,000 each accident."

{53}    GEICO responds that Plaintiffs' argument ignores Section 66-5-301(C), which provides that "unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer." GEICO further notes that the basis of the *Vigil* decision was the Court of Appeals' determination that the addition of a vehicle to an existing policy did not trigger the creation of a new contract but "merely amounted to a continuation of the original policy." *Vigil*, 1997-NMCA-124, ¶ 16.

{54}    We agree with GEICO. Nothing in our decisions in *Montano* or *Jordan* concerns the continuation, renewal, or modification of an existing automotive insurance policy. As we have explained, *Montano* does not set forth rules for obtaining rejections of UM/UIM coverage but, instead, establishes requirements for insurers seeking to limit their liability through antistacking provisions. *Montano*,

36

2004-NMSC-020, ¶ 17. In *Montano*, "we conclude[d] that the protracted litigation over the validity of anti-stacking clauses in this State demands our continued efforts to clarify when and under what circumstances those provisions might be enforced." *Id.* Our decision in that case therefore provides no authority for Plaintiffs' contention that a change in premiums or coverages requires a new rejection of UM/UIM coverage.

{55} Further, while *Jordan* does address the requirements for securing an insured's "knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled," 2010-NMSC-051, ¶ 2, the *Jordan* Court did not consider the question of what constitutes a *new* policy versus a "renewal" for purposes of applying Section 66-5-301(C). *Id.* ¶¶ 16-22. Moreover, nothing in *Jordan* calls into question the central observation of *Vigil* that "the policy trails the insured regardless of what vehicle is to be covered by the policy." *Vigil*, 1997-NMCA-124, ¶ 15.

{56} We conclude that the addition of a fourth vehicle to the Luerases' policy did not trigger the creation of a new contract obliging GEICO to comply with the *Jordan* requirements but instead only required it to comply with the requirements of Section 66-5-301(C). *See Vigil*, 1997-NMCA-124, ¶¶ 14-16. Additionally, because the initial UM/UIM selection/rejection form completed by the Luerases (indicating their

rejection of UM/UIM coverage) clearly stated that the insured's election "shall apply to all vehicles currently on the policy *and to all vehicles added to the policy*" (emphasis added), the blank selection/rejection form GEICO sent to the Luerases when they sought to add an additional vehicle to their policy merely afforded them the opportunity to make a different election and created no ambiguity warranting construal of the contract against GEICO.[9] *See Vigil*, 1997-NMCA-124, ¶¶ 11, 18-19 (explaining that "the validity of the initial rejection of UM coverage" was not affected by the plaintiffs' selections, since they were not "changing limits or adding coverages"); *cf. Lopez*, 1982-NMSC-034, ¶¶ 5-6 (holding that where the contract contained no mention of effect of payment of multiple premiums on multiple vehicles, it was ambiguous and warranted construal of its terms against the insurer).

{57}     We therefore hold that the addition of a new vehicle to the Luerases' policy did not trigger a new policy warranting compliance with *Jordan*'s requirements for rejection of UM/UIM coverage.

---

[9]This language was consistent with language appearing on the Declarations page stating that the insured could contact the insurer "at any time to request a change to the coverage limits provided by this policy."

38

**E.  Plaintiffs' Remaining Claims Are Remanded to the District Courts for Additional Development**

{58}  Plaintiffs' final three claims concern whether Defendant-insurers' "Limits of Liability" clauses misled insureds, whether GEICO's form letter instructing the Van Eppses to return a selection/rejection form to ensure processing of their application was either misleading or otherwise in violation of law, and whether Defendant-insurers must offer UM/UIM coverage on a per-vehicle basis. Because we conclude that each issue requires further factual and/or legal development below, we reverse the Court of Appeals' resolution of these issues and remand them to the respective district courts. We address each briefly in turn.

**1.  Whether Defendant-Insurers' "Limits of Liability" Clauses Mislead Insureds to Believe That Stacking Is Unavailable**

{59}  Both Safeway and GEICO include "Limits of Liability" clauses in their UM/UIM policy documents. Safeway's clause appears in its policy booklet under the subheading "Limits and Conditions of Payment Amounts Payable for Liability Losses" and states:

> Liability limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our liability limits.

GEICO's clause appears in its policy booklet under the heading "Limits of Liability" and states:

39

When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

{60} Plaintiffs argue that these are antistacking provisions and that their inclusion in insurers' policy booklets (1) precludes a knowing and intelligent rejection of UM/UIM coverage under *Jordan* by affirmatively misrepresenting to insureds that coverages may never be stacked, (2) violates public policy by limiting the insured to the benefit of a single liability limit while charging the insured multiple premiums, and/or (3) creates an ambiguity in the contract because it states that insureds may not stack coverages even as "New Mexico law demands that all UM/UIM coverages be aggregated and applied to cover an insured's damages absent a valid [rejection] of stacked UM/UIM coverage."

{61} Safeway responds that "policy language forbidding or limiting stacking" is not prohibited in New Mexico, and that *Montano* reiterated that such provisions do not violate public policy unless they are ambiguous or unless multiple premiums are charged for one coverage limit. Safeway and GEICO both suggest that Plaintiffs' claims concerning the limitation of liability clauses are inapt because the question of stacking only arises after a covered loss where the remedy is at issue. They contend that, because these cases concern insurer denials of coverage as opposed to

40

insurer denials of stacking (that is, an attempt to enforce an antistacking provision), the clauses at issue are irrelevant.

{62}     We decline to reach these arguments because none of the district courts whose decisions Plaintiffs appealed to the Court of Appeals directly considered, much less ruled on, whether the clauses at issue in fact amount to *antistacking provisions*. We note that neither limitation of liability provision at issue here expressly refers to stacking, unlike *Montano*, 2004-NMSC-020, ¶ 4 (quoting from the relevant "Limits of Liability" provision stating in part that "we will stack or aggregate up to two, but no more than two, Uninsured Motorist Insurance for Bodily Injury coverages under this policy" (internal quotation marks omitted)). However, Defendant-insurers have yet to be called on to explain precisely what the contested provisions *do* mean.

{63}     The only district court to address the issue found that the question whether GEICO's purported assertion that "stacking of UM/UIM is never available" is misleading to insureds would only arise "if the insured purchases UM/UIM coverage or if a rejection of UM/UIM coverage is invalid."[10] We conclude that this amounts to putting the cart, the purchase or rejection, before the horse. The determination of

[10]The Court of Appeals, without explanation, "reject[ed the *Ullman* Plaintiff's] contentions as a basis on which to reform Safeway's documents," *Ullman*, 2017-NMCA-071, ¶ 47, and declined to address the effect of the GEICO clause in *Lueras*, 2018-NMCA-051, ¶¶ 10-11.

whether specific contractual language violates New Mexico's public policy on stacking depends on the policy language at issue considered in light of the policy as a whole. *See Montano*, 2004-NMSC-020, ¶¶ 11-13 (reviewing prior decisions determining whether antistacking provisions violated public policy by examining the language of the provisions and determining whether multiple premiums were charged for coverage). Similarly, whether the challenged clauses are so misleading as to defeat an insured's knowing and intelligent rejection of UM/UIM coverage, *Marckstadt,* 2010-NMSC-001, ¶ 16, or create ambiguities in the contract, *Fickbohm v. St. Paul Ins. Co.,* 2003-NMCA-040, ¶ 10, 133 N.M. 414, 63 P.3d 517, depends on whether they in fact purport to limit stacking. Because these determinations depend on facts not yet developed in the present proceedings, they are more properly committed to the district court. "As an appellate court, we will not originally determine the questions of fact." *Guidry v. Petty Concrete Co*., 1967-NMSC-048, ¶ 13, 77 N.M. 531, 424 P.2d 806. On remand, the respective district courts should first ascertain the meaning of GEICO's or Safeway's limits of liability provisions and then determine whether, *in light of the documents constituting Defendant-insurers' offers of UM/UIM coverage*, the contested language created ambiguities in the offer, violated the public policy of New Mexico, or so misled insureds as to defeat a knowing and intelligent waiver of coverage.

## 2. Whether GEICO's Form Letter to Wendy Van Epps Was Misleading or Otherwise Improperly Discouraged the Van Eppses from Purchasing UM/UIM Coverage

{64} The fourth claim on appeal is limited to the case involving the Van Eppses. Van Epps argues that the form letter GEICO sent to Wendy Van Epps after she initially selected UM/UIM coverage through an online application system amounted to a "bait and switch." The letter stated:

> In order to complete the processing of your new policy, a signed option form is needed. The option form is enclosed in your new customer package and is located after your ID cards, but before your insurance contract. Please complete, sign and return all of the pages of the option form. The form may be returned via fax . . . .

> It is important that we receive this form back in order to continue your policy at the current premium, so please don't delay. If you do not complete this form, we are required to make adjustments to your coverage, which will result in an increase in your premium.

Van Epps contends that the letter was misleading and confusing because it failed to explain what "adjustments" GEICO would make to the Van Eppses' policy if they failed to complete the form or how their coverage or premiums might change, thereby discouraging the Van Eppses from purchasing UM/UIM coverage at all.

{65} GEICO responds that, because Wendy Van Epps initially selected UM/UIM coverage in an amount below her policy liability limits, she had effectively rejected the maximum amount of UM/UIM coverage. But because a rejection of coverage must be in writing, "by law, GEICO was required to obtain her rejection in writing"

or read in coverage at the policy's liability limits. GEICO explains that the form letter "always gets sent as a matter of course whenever an applicant selects UM/UIM coverage in an amount that is less than his liability limits" and defends the letter on the grounds that, had GEICO failed to secure the Van Eppses' rejection in writing, their policy would have been revised in accordance with law to include UM/UIM coverage up to the liability limits of their policy, and they would have been charged the higher premium.

{66} The Court of Appeals agreed with GEICO. *Lueras*, 2018-NMCA-051, ¶¶ 23-26. It determined that GEICO was required to send the letter because otherwise the insured's initial selection would have amounted to a legally deficient rejection of the offer of UM/UIM coverage. *Id.* ¶ 24. It disagreed with the Van Eppses' contention that the form and letter were ambiguous and that GEICO "discouraged" the purchase of UM/UIM coverage. *Id.* ¶ 26.

{67} We agree with the Court of Appeals that GEICO was legally required to send the selection/rejection form to Wendy Van Epps to effectuate her initial selection of UM/UIM coverage. *See id.* ¶ 24. Selection of an amount of coverage lower than the maximum available amounts to a rejection of that coverage and must be made in writing. *Weed Warrior*, 2010-NMSC-050, ¶¶ 14-15; *Marckstadt*, 2010-NMSC-001, ¶ 20.

{68}     However, we do not agree with the Court of Appeals' conclusion that the letter created no ambiguity in the offer as a matter of law. *See Lueras*, 2018-NMCA-051, ¶ 26. Van Epps appears not to have argued (and the Court of Appeals did not address) whether, in the specific circumstances at issue here, GEICO's documentation may have run afoul of *Jordan*'s requirement that GEICO provide sufficient information about premiums and coverages to "meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage." 2010-NMSC-051, ¶ 24. The parties did not fully litigate this issue before the district court, nor did that court make a specific determination as to whether GEICO's letter created an ambiguity in the offer sufficient to call into question the validity of the rejection. Indeed, the hearing on GEICO's motion for summary judgment evinces significant confusion among the parties and the court about when GEICO's letter was sent, why it was sent, and what the effect would have been had the Van Eppses not returned it.

{69}     We therefore reverse the Court of Appeals' rejection of Van Epps's claim concerning the form letter sent to the Van Eppses and remand to the district court for its consideration of this issue.

3.     **Whether Insurers Must Offer UM/UIM Coverage on a Per-Vehicle Basis**

{70}     The *Lueras* Plaintiffs argued before the district courts that GEICO's selection/rejection form, which requires an insured to select or reject UM/UIM

45

coverage on all insured vehicles or none of them, violates New Mexico law.[11] The Luerases contended that our decision in "*Montano* held that an insurer must offer UM/UIM coverage on each vehicle, must declare a premium charge for each coverage, and must permit the insured to reject some or all of the offered coverages on a per-vehicle basis." They argued that GEICO's failure to offer per-vehicle UM/UIM coverage violated this prescription and "the public policy of New Mexico . . . to expand UM[/UIM] coverage."

{71} Van Epps argued that GEICO's failure to explain to Wendy Van Epps that "she was entitled to select UM/UIM coverage in different amounts on each vehicle and was entitled to this UM/UIM coverage regardless of what vehicle her family was in when involved in an accident with the UM motorist" meant that her waiver of coverage "was not an informed or intelligent decision." He argued that, had Wendy Van Epps known of these aspects of coverage, she would not have rejected

---

[11]Safeway's form does provide per-vehicle UM/UIM coverage options. Ullman's version of this question is "[w]hether an insurer can obtain a valid rejection of UM/UIM coverage on a multi-vehicle policy where it affirmatively misrepresents to an insured that rejection of UM/UIM coverage on one vehicle will eliminate all UM/UIM coverage on a policy regardless of UM/UIM selections on other insured vehicles." However, Ullman's brief in chief fails to explain how Safeway's form achieves this misrepresentation, nor does it cite any authority in support of Ullman's argument. We therefore decline to address it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that a reviewing court "will not review unclear arguments, or guess at what [a party's] arguments might be").

46

coverage on all four of her vehicles, referring to an affidavit submitted by Wendy Van Epps in support. In his argument on the motion before the district court, Van Epps also cited *Montano* in support of his contention that per-vehicle coverage options are required in New Mexico.

{72} The district court in the Lueras matter rejected this claim. It determined that the Luerases' argument "conflate[d] *Jordan's* explanation of the statutory requirements for obtaining a valid rejection of UM/UIM coverage with the judicially-created remedy of stacking [addressed in *Montano*]." The court stated that "[a]lthough stacking and the availability of UM/UIM coverage both may affect the amount of benefits available under a policy, they are separate inquiries." The court did not address the Luerases' contention that New Mexico's public policy requires a per-vehicle UM/UIM coverage option.

{73} The district court in the Van Epps matter did not specifically address the claim that New Mexico law requires a per-vehicle UM/UIM coverage option.[12]

{74} On appeal to the Court of Appeals, both Van Epps and the Luerases argued that our decision in *Montano* established a requirement that insurers offer UM/UIM coverage on a per-vehicle basis and that GEICO's form violates the dictates of that

---

[12]The district court did conclude broadly that "the form was adequate to explain what was being rejected and fully complied with the requirements set forth in *Jordan* . . . ." The court also concluded that GEICO's "form was not ambiguous."

47

decision and contravenes the legislative purpose of the UM/UIM statute. Notably, the Lueras and Van Epps Plaintiffs relied on *Montano* for their public policy arguments.

{75} The Court of Appeals, reviewing this claim de novo, determined that the Lueras and Van Epps Plaintiffs had "misinterpreted *Montano*," concluding that "*Montano* did not consider whether automobile insurers should be required to offer policyholders UM/UIM coverage on a per-vehicle basis, much less impose such a requirement." *Lueras*, 2018-NMCA-051, ¶¶ 9, 13, 18. Other than the hypothetical example of UM/UIM coverage described in *Montano*, the *Lueras* Plaintiffs had cited no authority for the claim that GEICO was required to offer per-vehicle coverage, and the Court determined that "nothing in the UM/UIM statute . . . provides [for such a requirement]," *Lueras*, 2018-NMCA-051, ¶¶ 16-18.

{76} Before this Court, the Luerases and Van Epps reprise their argument that our decision in *Montano* established the requirement that insurers offer UM/UIM coverage on a per-vehicle basis. We agree with the Court of Appeals' conclusion that *Montano* established no such requirement. *Lueras*, 2018-NMCA-051, ¶ 18. As we have said, *Montano* addressed the requirements an insurer must meet should it seek to preclude the stacking of coverages in a multivehicle policy for which the insured pays multiple premiums. 2004-NMSC-020, ¶ 1.

48

{77}    However, our conclusion that *Montano* does not impose such a requirement does not end the inquiry as to whether New Mexico law, interpreted in light of the Legislature's clear purpose of encouraging the purchase of UM/UIM insurance, supports the imposition of a requirement that insurers offer per-vehicle UM/UIM coverage. Plaintiffs have thus far only faintly developed an argument in support of such a requirement, suggesting that it might enhance freedom of contract and encourage some consumers to purchase UM/UIM insurance who would otherwise elect to reject coverage. It is the role of appellate courts to "review the case litigated below, not the case that is fleshed out for the first time on appeal." *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (internal quotation marks and citation omitted). We "will not rule on an inadequately-briefed issue where doing so would require this Court 'to develop the arguments itself, effectively performing the parties' work for them.'" *State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 (quoting *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53).

{78}    On remand of the Lueras and Van Epps matters, each party will be afforded an opportunity to litigate this issue properly and fully should each choose to do so.

49

## III. CONCLUSION

{79} We hold that, in order to secure a knowing and intelligent rejection of UM/UIM coverage in a policy insuring multiple vehicles and charging multiple premiums, an insurer must explain that the insured may be entitled to stack coverages on multiple vehicles, in the event of a covered loss. Because we apply this rule with selective prospectivity, we reverse the Court of Appeals' resolution of this issue with respect to the three petitions before us. We also reverse the Court of Appeals' determination that GEICO's and Safeway's limitation of liability clauses are not so misleading as to invalidate a UM/UIM rejection, as well as the Court of Appeals' determination that the February 2010 letter GEICO sent to the Van Eppses did not preclude a knowing and intelligent rejection of UM/UIM coverage. Finally, we affirm the Court of Appeals' determination that the addition of a new vehicle to an existing policy does not require a new offer or a new rejection of UM/UIM coverage under New Mexico law. We remand each of the three matters to the respective district court for further proceedings in accordance with this opinion.

{80} **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

50

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**


_____

**DREW D. TATUM, Judge**
**Sitting by designation**


**JAROD K. HOFACKET, Chief Judge, specially concurring**
**Sitting by designation**


**ANGIE K. SCHNEIDER, Chief Judge, joining in special concurrence**
**Sitting by designation**

51

**HOFACKET, Chief Judge (specially concurring).**

{81}   Based on the precedent and the sound legal reasoning in Part II.A-C, *supra*, I concur with the opinion.

{82}   In order for a rejection of UM/UIM coverage to be valid, a meaningful offer of coverage must be made and the consumer must knowingly and intelligently act to reject the offer. As reasoned in the opinion, this now includes a meaningful offer and discussion of the effect of stacking in multiple-vehicle policies. I concur that such a requirement may not have been foreseeable, because of the language in *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214, and *Jaramillo v. Government Employees Insurance Co.*, 573 F. App'x 733 (10th Cir. 2014) (nonprecedential), and that the selective prospective application is appropriate.

{83}   However, I write separately to point out that the precedent itself may be the cause of the confusion that it was trying to alleviate. Three cases are consolidated for ruling in this matter. *Jordan* was also a consolidated case. The district courts, the Court of Appeals, the United States Court of Appeals for the Tenth Circuit, and this Court in prior opinions have all labored on this and similar questions.

{84}   In *Jordan*, this Court stated:

>       If an insurer does not (1) offer the insured UM/UIM coverage equal to
>       his or her liability limits, (2) inform the insured about premium costs

52

corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

2010-NMSC-051, ¶ 22. Insurers must comply with the above requirement, and if they fail to do so, there is already an express remedy: the policy will be reformed. *Id.* That language is broad enough to answer today's question regarding stacking in this case.

{85}    However, the Court in *Jordan* noted that insurers continued to offer "coverage in ways that are not conducive to allowing the insured to make a realistically informed choice" and found "it necessary to prescribe workable requirements" and a menu of disclosures. *Id.* ¶¶ 20, 21. This is nearly the same dilemma presented to the Court today, and the Court finds it necessary to further clarify those workable requirements.

{86}    I respectfully submit that it was unwise for the Court in *Jordan* to have provided those workable requirements. The Court noted that the "form and manner of a valid rejection are established by the rules and regulations promulgated by the superintendent of insurance." *Id.* ¶ 17 (internal quotation marks and citation omitted). The superintendent of insurance should have promulgated any needed requirements.

53

{87}     I would use the opportunity presented in this case to overrule *Jordan* to the extent that it promulgated workable requirements, and therefore it would not have been necessary to extend and clarify them in the opinion. Other bodies should set workable requirements to comply with the law as stated in *Jordan*, *id.* ¶ 22, quoted above.

{88}     Notwithstanding this concern, I concur with the opinion and the outcome. *Jordan* has not been overruled, and I agree with the legal reasoning in the opinion interpreting *Jordan* and the other precedents and the need for additional clarity on the workable requirements promulgated by *Jordan*.

_____
**JAROD K. HOFACKET, Chief Judge**
**Sitting by designation**

**I CONCUR:**

_____
**ANGIE K. SCHNEIDER, Chief Judge**
**Sitting by designation**